**INTEGRATED CIRCUITS UNLIMITED,**
Plaintiff–Appellant, Cross–Appellee,

v.

**E.F. JOHNSON COMPANY,**
Defendant–Appellee,
Cross–Appellant.

**Nos. 592, 593, Dockets 88–7800, 88–7836.**

United States Court of Appeals,
Second Circuit.

Argued Jan. 3, 1989.

Decided May 23, 1989.

Michael L. Paikin, New York City (Patrick S. Mielo, Paikin & Mielo, P.C., New York City, of counsel), for plaintiff-appellant-cross-appellee.

Joseph C. Markowitz, New York City (Debra Freeman, Morrison & Foerster, New York City of counsel), for defendant-appellee-cross-appellant.

Before KEARSE, CARDAMONE and WINTER, Circuit Judges.

CARDAMONE, Circuit Judge:

Appellant Integrated Circuits Unlimited (ICU), a seller of electronic components, appeals from an order of the United States District Court for the Eastern District of New York (Weinstein, J.) dated August 10, 1988, ordering defendant-appellee, E.F. Johnson Co. (Johnson) to pay ICU the sum of $4,638.73. The district court's opinion is reported at 691 F.Supp. 630 (E.D.N.Y. 1988). ICU had sought recovery of the full contract price amounting to $160,725 for the microprocessors it sold to Johnson. Johnson cross-appeals arguing that the district court's legal analysis should be upheld, but that the logic of its decision requires that the judgment be modified to award no damages to ICU, and instead to award judgment in Johnson's favor in the amount of $10,359.

This appeal is a diversity case which arises from a dispute regarding a series of contracts for the sale of goods, and is therefore controlled by Article 2 of the Uniform Commercial Code (U.C.C. or Code), as adopted by the State of New York. Here, the issues that we must decide are whether, under the Code: (1) a buyer's effective rejection of goods, wrongful or not, entitles the buyer to obtain a refund of the purchase price it paid, subject only to the refund being discounted by the amount of the seller's actual damages; or (2) if the buyer's rejection is effective, but wrongful, may the seller maintain either an action for the purchase price or for its lost profits?

## FACTS

ICU sells electronic components. Johnson manufactures two-way taxi radios. When, in early 1984, Johnson found itself unable to obtain necessary electronic parts from its usual sources of supply because the demand for certain types of microprocessors exceeded the available supply, it purchased several lots of these parts from ICU. The price of the components would ordinarily have been about $30 each, but because of the short supply Johnson's three purchase orders in March 1984 were at least $55 per unit above the previous market price. It placed purchase order number WO4746 for 2,500 UPD8748 microprocessors at $85 each, order number WO4747 for 2,500 D8748H microprocessors at $87.50 each, and order number WO4750 for 1,100 D8749 microprocessors at $120 each. Johnson bought a total of 6,100 of these electronic devices. From March to April 1984 ICU delivered to Johnson in several separate shipments, 1,709 UPD8748 microprocessors, and Johnson paid $23,800 on March 30 for 280 of them. Johnson also received all 1,100 D8749's, for which it paid the full contract price of $132,000. No other payments were made in March or April 1984.

On April 24 Johnson sent ICU a letter in which it purported to reject 130 of the UPD8748's that had been shipped in late March. The rejection was based upon tests conducted by an independent laboratory which indicated that an unacceptable percentage of the devices were of substandard quality. The next day Johnson sent ICU a similar letter stating that the D8749 units had also failed to meet its acceptable quality level, and offered their return for credit. On May 8 Johnson sent ICU a list of 1,973 microprocessors that it wished to return based on these test results. Under separate cover, it sent ICU 18 samples of those rejected so that ICU could conduct its own tests.

On a number of occasions from May until August 1984 the buyer requested authorization from the seller to return the rejected devices. ICU continued to demand payment of its invoices, and refused to accept the rejects. On May 21 Johnson paid $70,465 to ICU in full payment for 829 parts received in mid-April. On August 15, 1984 Johnson informed ICU that it was returning the entire lot of rejected devices—consisting of 1,973 microprocessors—and at the same time debited ICU's account

$170,450, the amount equal to the value of the rejected parts, minus the 18 samples previously returned and debited. Johnson also withheld payment on two unpaid ICU invoices totalling $160,725. When a carrier attempted delivery of the rejected parts, ICU refused delivery and the goods were returned to Johnson, which has since held them in good condition for ICU's account.

## PROCEEDINGS BELOW

■■■■ In considering the merits of the parties' respective contentions, the district judge properly distinguished between substantively wrongful and procedurally ineffective rejections. *See* N.Y.U.C.C. § 2–602 (McKinney 1964); *see also* J. White & R. Summers, *Uniform Commercial Code* 314 (2d ed. 1980). The basic principle is that the buyer may make a procedurally "effective" rejection of goods it purchased, even though such rejection is substantively wrongful. "Wrongful" refers to a rejection of conforming goods, whereas an "effective" rejection is timely and indicates the buyer has satisfied the procedural obligations attendant upon his rejection. The distinction is important because if a buyer's rejection is procedurally effective—even though wrongful—a seller is barred from recovering the contract price. But the buyer is subject to liability for the seller's actual damages brought about by the buyer's refusal to accept the goods it purchased. *See* White & Summers, *supra* at 258 (" '[B]uyer may have the power to make an 'effective' rejection even though his action is in breach of contract and subjects buyer to liability for damages.' " (quoting 1 N.Y. State Law Revision Comm'n 1955 Report 520 (1955))).

Although the trial court initially concluded that Johnson's rejection of all 1,973 parts had been substantively wrongful, in its final memorandum and order it reconsidered this earlier conclusion and held that the defects found in five percent of the parts rendered the shipments "nonconforming in their entirety." 691 F.Supp. at 632. The district court also ultimately concluded that all but 174 of the 1,973 parts listed in Johnson's letter of May 8 had been right-fully rejected. It held that regardless of whether Johnson's rejection had been substantively justified, it had been procedurally effective. Thus, it correctly concluded that ICU was limited to recovering nonacceptance damages on the 174 wrongfully rejected parts, and could not maintain an action for the purchase price under U.C.C. § 2–709, which requires an "acceptance" by the buyer as a prerequisite to the seller's recovery of the price. Acceptance, which is defined under § 2–606 as "fail[ure] to make an effective rejection," never occurred. In addition, the district court also held that Johnson's actions following its rejection had been proper. It ruled that the buyer had complied with U.C.C. § 2–602 by holding the rejected goods with reasonable care for a long enough period of time to permit ICU to remove them.

Judge Weinstein did not believe Johnson had any obligation under U.C.C. § 2–603 to resell the rejected parts because the goods were not perishable and ICU—as a seller of microprocessors—was in a better position to resell than Johnson, which had no access to the market for these devices. 691 F.Supp. at 635. The inflated market price at which Johnson had contracted to purchase the microprocessors was found by the district court to have continued as the market price for several months after Johnson's rejection. Thus, ICU should have accepted the returned goods and promptly resold the 174 wrongfully rejected parts on the open market. Had ICU elected to pursue this course of action, it would thereafter have been entitled to recover the difference, if any, between the contract price and the resale price, plus its incidental damages. *See* U.C.C. §§ 2–706 & 2–710.

Because ICU failed to accept and resell the rejected goods, it was thereby limited in the damages it could recover to the difference between the contract price and the market price at the time Johnson rejected the goods. U.C.C. § 2–708(1). Using the contract price/market price differential as the measure of damages, the district court concluded that ICU was entitled to none; the contract and market prices for microprocessors at all times relevant to

this suit were the same, and ICU failed to prove any incidental damages. Further, given the limited supply of these parts the trial court determined that ICU could not successfully claim to be a lost volume seller, and therefore could not recover its lost profits on the sales to Johnson.

## DISCUSSION

■ As a preliminary matter, and before entering upon a discussion of the law, we comment on appellant's suggestion in its brief and at oral argument that because the trial court initially believed Johnson's rejection of the goods was wrongful, and only later changed its mind regarding the propriety of the rejection, 691 F.Supp. at 632, that this turnabout somehow rendered the latter decision suspect. This contention is frivolous. The factual determinations that a trial court finally makes are what an appellate court reviews. During the resolution process the trial judge in a bench trial must be free to reassess the evidence, and to alter or modify its views before final judgment. *See Harris v. Plastics Mfg. Co.,* 617 F.2d 438, 440 n. 2 (5th Cir.1980) (per curiam); *E.V. Prentice Machinery Co. v. Associated Plywood Mills,* 252 F.2d 473, 479 (9th Cir.), *cert. denied,* 356 U.S. 951, 78 S.Ct. 917, 2 L.Ed.2d 844 (1958). It should not be—nor is it—bound in any way by its preliminary determinations which, upon further reflection it later concludes were mistaken.

■ Turning to the merits, the sole question is whether the district court's award of $4,638.73 to ICU was consistent with its legal and factual conclusions. Although we agree with the district court's U.C.C. rulings and a good deal of its discussion, and adopt its findings of fact, the trial court's award of damages fails to square with the logic of its holdings. As previously noted, it determined that all but 174 of the 1,973 devices had been rightfully rejected. Thus Johnson was entitled to credit on a total of 1,799 (1,973 minus 174) of the rejected devices. The trial court then computed the amounts Johnson paid or was charged for each of the 1,799 microprocessors, multiplied those amounts by the number of units sought to be returned and, adding these figures together, concluded that ICU owed Johnson $105,086.27 in reimbursements for sums Johnson had paid it, plus $51,000 in credit—for a total of $156,086.27. The district judge then reasoned that because Johnson had withheld $160,725 on ICU's account, the former was required to pay the latter the difference between the two figures—$4,638.73. It is at this juncture that the court's assessment of damages departs from its correct legal conclusions under the Code.

In its consideration of the Code sections governing this transaction, Judge Weinstein correctly held that even if Johnson's rejection of the 174 parts had been wrongful, ICU was not entitled to any damages under § 2–708. *See* 691 F.Supp. at 634. The trial judge reached this decision, first, because rejection of all the parts had been effective, thereby precluding an action for the price under § 2–709 and, second, because ICU had proved no damages based on any contract/market price differential. Had the court applied this reasoning to its damages calculations, it would have held that Johnson's rejections did not entitle ICU to any recovery. Again, this follows because ICU was not a lost volume seller and could not therefore recover its lost profits, and because it was not entitled, in the face of an effective rejection, to maintain an action for the price. ICU's only other remedy, the difference between the contract price and the market price plus incidental damages, was also unavailing because there was no differential: the contract and market prices were identical. Further, ICU had introduced no proof of incidental damages. Consequently, regardless of the supposed wrongful rejection of 174 units, Johnson was entitled to full credit for the value of the parts it effectively rejected. To sustain a contrary holding would be tantamount to awarding ICU the price of the goods returned or of its lost profits which, on these facts and for the reasons previously stated, is unauthorized by the Code.

The correct measure of damages therefore is as follows: The total contract price

of all parts rejected by the buyer (minus two percent discounts for early payments on certain invoices) was $171,084. Of the 1,973 microprocessors sought to be returned, 1,373 had already been paid for, and the buyer accordingly withheld payment on an invoice in the amount of $51,-000 for the remaining 600 units. Johnson also withheld payment on an invoice for parts unrelated to those at issue in this litigation—parts it had accepted and used in the amount of $109,725. Thus, the total amount Johnson withheld was $160,725. That amount is $10,359 *less* than the adjusted $171,084 contract price of the effectively rejected devices. Johnson is therefore entitled to a refund of $10,359 from ICU as the full amount it could have properly withheld.

We have carefully considered ICU's arguments that the district court erred in not awarding it the contract price of the entire lot of microprocessors, and conclude that this contention is entirely without merit. It amounts to no more than an attempt to persuade us to reverse the district court's findings of fact of nonconformity which, as earlier indicated, we cannot say are clearly erroneous.

### CONCLUSION

Accordingly, the district court's award of $4638.73 in damages to ICU is reversed and the award vacated. This case is remanded to the district court for it to award damages as set forth above to cross-appellant Johnson in the amount of $10,359.00, with interest from May 8, 1984, the date on which Johnson notified ICU of its rejection.