United States Court of Appeals,

Fifth Circuit.

No. 91-6330

Summary Calendar.

MEINEKE DISCOUNT MUFFLER, Plaintiff-Appellee/Cross-Appellant,

v.

Wesley JAYNES and Marion Jaynes, Defendants-Appellants/Cross-Appellees.

Aug. 30, 1993.

Appeals from the United States District Court for the Southern District of Texas.

Before JOLLY, DUHÉ, and BARKSDALE, Circuit Judges.

DUHÉ, Circuit Judge:

A franchisor, Meineke Discount Muffler Shops, Inc. (Meineke), sued two of its former franchise owners. The district court ruled in favor of Meineke finding that the franchisees, Wesley and Marion Jaynes ("the Jaynes"), violated the licensing agreement, and that the Jaynes engaged in a civil conspiracy to interfere with business and contractual relations. We affirm.

## I. *Prologue*

The Jaynes purchased a Meineke franchise from Robert Strange in 1980. Strange had a fifteen year licensing agreement with Meineke, valid by its terms until September 28, 1989, which he sold to the Jaynes with Meineke's approval. The district court found, and the Jaynes do not contest, that Meineke has performed all of its obligations under the licensing agreement. R. 3035, 3043.[1]

It is undisputed that before their licensing agreement with Meineke expired, the Jaynes entered into an operating agreement with Autocare Distribution d/b/a Mike's Muffler and Brake ("Autocare"). The Autocare agreement called for the Jaynes to operate a "Mike's Muffler & Brake" automotive service center in the same location as their former Meineke franchise. On September 1, 1989, pursuant to the Autocare agreement, the Jaynes began operating "Mike's Muffler & Brake Shop" at

---

[1]The Jaynes did contest Meineke's representations regarding its trade and service marks. These contentions are without merit, and are discussed *infra* at § V.

the same location. This business offered the same products and services as the Meineke operation—installation and repair of automotive exhaust systems, brakes and shocks.

Meineke demanded that the Jaynes cease their activities, pointing out that the Jaynes were violating provisions of the Meineke-Jaynes licensing agreement. When these entreaties went unheeded, Meineke sued the Jaynes, alleging that they: (1) violated the licensing agreement's "Covenant Not to Compete;" (2) conspired to interfere with contractual and business relations; (3) engaged in unauthorized use of Meineke's protected trademarks; and (4) engaged in unfair competition. R. 6-17. Meineke also sought attorney's fees under the terms of the licensing agreement. *Id.*

The Jaynes answered Meineke's complaint, and also filed counterclaims and third party claims.[2] Following trial the district court concluded, *inter alia:* (1) The Jaynes breached the Meineke-Jaynes' licensing agreement by entering into the agreement with Autocare, R. 3038; (2) the Jaynes and Autocare conspired to interfere with contractual and business relations existing between the Jaynes and Meineke, *id.;* (3) the Jaynes had no standing to seek cancellation of Meineke's trademarks, *id.* at 3026; and (4) the Jaynes were unable to press their DTPA claims against Meineke, *id.* at 3023. For conspiring to breach the licensing agreement during its term, the court assessed actual damages of $4,420, and punitive damages of $6,000. The court awarded nominal damages of $10 for the Jaynes' post-termination violation of the licensing agreement's covenant not to compete, and for continuing to use the same telephone number for "Mike's Muffler & Brake" that was used by the Meineke operation. Over $560,000 in attorneys' fees and costs were also assessed against the Jaynes.

On appeal, the Jaynes raise a host of errors. We address each in turn.

## II. *Covenant Not to Compete*

The district court held that the Jaynes violated the licensing agreement's covenant not to

---

[2]The Jaynes have not appealed any judgments from their third-party claims. Consequently, we do not address these matters.

compete.[3] Paragraph 18 of the agreement prohibits the franchisee from operating another competitive business during the duration of the agreement. The franchisee also agrees to not operate a competing business "within the one (1) year period following the termination that is located within a radius of twenty (20) miles" from the Meineke location. R. 43. The Jaynes-Autocare agreement, and the operation of "Mike's Muffler & Brake" at the exact location of the Jaynes' former Meineke franchise is a blatant violation of the licensing agreement. On appeal, the Jaynes do not contest the court's findings as to their actions;[4] rather, they attack the legal validity of the covenant not to compete.

We review this contract provision de novo. *See Technical Consultant Servs., Inc. v. Lakewood Pipe of Texas, Inc.,* 861 F.2d 1357, 1362 (applying Texas law). The starting point in our analysis is Tex.Bus. & Com.Code § 15.50 (Supp.1993):

[A] covenant not to compete is enforceable to the extent that it:

(1) is ancillary to an otherwise enforceable agreement...., and

(2) contains reasonable limitations as to time, geographic area, and scope of activity to be restrained that do not impose a greater restraint than necessary to protect the goodwill or other business interest of the promisee.

*Id.; see also Ruscitto v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 777 F.Supp. 1349, 1354 (N.D.Tex.), *aff'd,* 948 F.2d 1286 (5th Cir.1991), *cert. denied,* --- U.S. ----, 112 S.Ct. 1994, 118 L.Ed.2d 590 (1992).

First, we agree with the district court that the covenant not to compete was ancillary to an otherwise enforceable agreement, *i.e.* the franchise license.[5] We next evaluate whether or not the

---

[3]The Jaynes seem to argue that since the district court denied Meineke's request for a preliminary injunction, the covenant not to compete is unenforceable. (The trial court initially held that Meineke did not have any protectable trade secrets which would warrant injunctive relief). This argument presupposes that the court's findings and conclusions after an abbreviated hearing on a preliminary injunction are binding as the law of the case. Such an argument is incorrect. *See University of Texas v. Camenisch,* 451 U.S. 390, 395, 101 S.Ct. 1830, 1834, 68 L.Ed.2d 175 (1981); *Integrated Circuits Unlimited v. E.F. Johnson, Co.,* 875 F.2d 1040, 1043 (2nd Cir.1989).

[4]We accept these findings as correct. Fed.R.Civ.P. 52(a).

[5]An agreement is ancillary to an otherwise enforceable agreement if "it is part of and subsidiary to an otherwise valid transaction or relationship which gives rise to an interest worthy of protection.... Examples of legitimate, protectable interests include business goodwill, trade secrets, and other confidential or proprietary information." *DeSantis v. Wackenhut Corp.,* 793

restrictive aspects of the agreement (time, geography, and scope) are reasonable. *See Henshaw v. Kroenecke,* 656 S.W.2d 416, 418 (Tex.1983) (reasonableness of agreement not to compete is question of law). The burden was on the Jaynes to prove that the restraints were unreasonable. Tex.Bus. & Com.Code § 15.51(b) (Supp.1993); *see also Butts Retail, Inc. v. Diversifoods, Inc.,* 840 S.W.2d 770, 772 (Tex.Civ.App.—Beaumont 1992, writ denied) (placing burden of proof on franchisee).[6]

The Jaynes argue at length that the covenant's prescriptions on time and geography are unreasonable.[7] As a diversity court we are *Erie* bound to apply Texas law, and using this benchmark, we conclude that the one year/twenty mile restriction is not unreasonable as a matter of law. *See Ruscitto,* 777 F.Supp. at 1354 (applying Texas law, one year prohibition on soliciting customers reasonable); *Isuani v. Manske-Sheffield Radiology Group, P.A.,* 805 S.W.2d 602, 606 (Tex.Civ.App.—Beaumont 1991, writ denied) (one-year, fifteen mile limitation reasonable); *Property Tax Assocs., Inc. v. Staffeldt,* 800 S.W.2d 349, 352 (Tex.Civ.App.—El Paso 1990, writ denied) (two year, county-wide restraint reasonable); *Posey v. Monier Resources, Inc.,* 768 S.W.2d 915, 918-19 (Tex.Civ.App.—San Antonio 1989, writ denied) (salesman restrained from working in former sales area for two years).

The restraints were reasonable considering Meineke's legitimate business interests. The district court found that Meineke expended considerable resources to promote name-recognition for products and services being offered by its franchises. R. 3037. The Appellants do not seriously contest this finding, and we conclude that the restrictions placed on the Jaynes under the licensing

---

S.W.2d 670, 682 (Tex.1990), *cert. denied,* 498 U.S. 1048, 111 S.Ct. 755, 112 L.Ed.2d 775 (1991). The covenant not to compete was ancillary to the licensing agreement which created mutually enforceable interests in the operation of a Meineke franchise.

[6]*Butts Retail, Inc.* also negates the Appellants argument that the franchise agreement was a personal service contract. *See* 840 S.W.2d at 773.

[7]We fail to see how territorial restrictions placed on post-termination activities as a licensor or franchisor are relevant to this dispute. The Appellants operated a single competing business in the very same location as their former Meineke operation; they were not licensing or franchising any other enterprises. They cannot ask this court to engage in speculation as to what might have occurred had Meineke attempted to enforce the geographic limits of paragraph 18(b)(2).

agreement "do not impose a greater restraint than necessary to protect the goodwill or other business interest of [Meineke]." Tex.Bus. & Com.Code § 15.50 (Supp.1993).

The Appellants' second point of error is likewise unavailing. They contend that the court erred by *reforming* the covenant, and then awarding damages. We have searched the record to ascertain where (and how) the court reformed the covenant. We find no reference to this action, and the Appellants' record cite does not support this argument.[8] This point of error is without merit.[9]

### III. *Conspiracy to Interfere with Contractual and Business Relations*

The district court held that the Jaynes conspired with Autocare to interfere with the contractual and business relations between Meineke and the Jaynes. Initially, they contend that the district court erred in refusing to direct a verdict in their favor at the close of Meineke's case-in-chief. *See* Fed.R.Civ.P. 52(c) ("If during a trial without a jury a party has been fully heard with respect to an issue ... the court may enter judgment as a matter of law against that party[.]").

The inquiry regarding a directed verdict request is the same on appeal as it is at the trial stage: All inferences from the evidence are drawn in favor of the nonmoving party, and a verdict should not be directed unless the facts point overwhelmingly in favor of the movant's position. *See Entente Mineral Co. v. Parker,* 956 F.2d 524, 526 (5th Cir.1992) (citing *Boeing Co. v. Shipman,* 411 F.2d 365 (5th Cir.1969) (en banc)).

The Appellants argue that the only evidence of a conspiracy was the Autocare-Jaynes agreement, and that this failed to provide an adequate basis for the conspiracy claim. This argument

---

[8]The Jaynes assert that Conclusion of Law No. 10, R. 3029, amounts to a reformation of the covenant not to compete. This conclusion states:

> The covenant not to compete is reasonable as to time, geographical area and scope of activity. The restricted activity is only that which directly competes with Meineke.

> We read this passage as an affirmation of the validity of the covenant, not as a reformation of it.

[9]The Appellants also argue that the district court erred by using an unenforceable covenant not to compete as a basis for awarding damages for conspiracy to interfere with contractual and business relations. We held previously that the covenant was reasonable and enforceable under Tex.Bus. & Com.Code § 15.50 (Supp.1993). Therefore, the Appellants' third point of error is without merit.

is without merit. There was sufficient evidence supporting the nonmovant's (Meineke) position; a directed verdict would have been improper because the facts did not overwhelmingly stack-up in the Jaynes' favor.

A claim for civil conspiracy has five elements: (1) two or more persons; (2) have an objective to be accomplished; (3) a meeting of the participants' minds on the objective or course of action; (4) one or more unlawful, overt acts; and, (5) resulting damages. *Massey v. Armco Steel Co.,* 652 S.W.2d 932, 934 (Tex.1983).

All elements are present in the instant case. There were at least two participants (the Jaynes and Autocare). An objective was present (establish competing business in contravention of Meineke-Jaynes licensing agreement). There was a meeting of the minds on this objective, as evidenced by the Autocare-Jaynes agreement. An unlawful interference with the existing licensing agreement resulted in damages to Meineke in the form of lost franchise and advertising fees. The district court found these facts, and we conclude such findings are not clearly erroneous. Fed.R.Civ.P. 52(a). With the factual predicate for this claim established, the court did not err in its legal conclusion that an actionable civil conspiracy between the Jaynes and Autocare resulted in damages to Meineke.

The Appellants argue that the conspiracy to breach the Meineke-Jaynes agreement "could only have been based on those breaches that occurred after the termination of the License Agreement." However, the Appellants incredulously gloss over the fact that they operated "Mike's Muffler & Brake" at the exact location of their former Meineke franchise while the Meineke-Jaynes license agreement was still in effect. This in-term violation of the Meineke-Jaynes licensing agreement's covenant not to compete was the basis for the civil conspiracy claim. R. 3038-39.

IV. *DTPA Claim*

The Jaynes contest the district court's denial of their claim under Texas' Deceptive Trade Practices-Consumer Protection Act. Tex.Bus. & Com.Code Ann. §§ 17.41-.63 (Vernon 1987 & Supp.1993). The DTPA does not apply to wholly intangible property rights. *See Texas Cookie Co. v. Hendricks & Peralta, Inc.,* 747 S.W.2d 873, 876 (Tex.Civ.App.—Corpus Christi 1988, writ denied). It has been applied to franchise situations where the collateral services provided to a

franchisee formed the basis of the DTPA claim.  *Id.* at 877;  *see also Cameron v. Terrell & Garrett, Inc.,* 618 S.W.2d 535, 539 (Tex.1981) (goods or services acquired must form the basis of DTPA claim).

To proceed under the DTPA, a claimant must be a "consumer."  *Eckman v. Centennial Sav. Bank,* 784 S.W.2d 672, 674 (Tex.1990).  To be a consumer, the DTPA claimant must (i) have sought or acquired goods[10] or services[11] by purchase or lease, *and* (ii) show that these same goods or services form the basis of the DTPA complaint.  *Schmueser v. Burkburnett Bank,* 937 F.2d 1025, 1028 (5th Cir.1991);  *Cameron,* 618 S.W.2d at 539.

The Jaynes are not consumers for DTPA purposes.  Their agreement with Meineke allowed them to operate a Meineke franchise, and to receive all the accoutrements which accompany the operation of a nationally recognized franchise operation.  The Appellants' DTPA complaint focuses on the validity of Meineke's ownership of its trademarks and service marks.  *See* R. 63-64 ("Meineke Discount represented that the trademark rights were fully established....  The representations by [Meineke] were false, misleading, and deceptive....").  It is this intangible property right, and not any equipment or services provided by Meineke, that formed the basis of the Jaynes' DTPA claim.  Because both prongs of the consumer status test are not met, the district court properly denied the Jaynes DTPA relief.  *See Schmueser,* 937 F.2d at 1028;  *Kennedy v. Sale,* 689 S.W.2d 890, 893 (Tex.1985);  *Cameron,* 618 S.W.2d at 539.

## V. *Trademark Claims*

The Jaynes attempted to cancel Meineke's federally registered trademarks.  They argued that by failing to disclose to the United States Patent and Trademark Office the previous use of the tradename "Bass & Meineke," Meineke fraudulently obtained protection under the trademark laws. The Jaynes have no proprietary interest in "Bass & Meineke," which is the tradename for an auto

---

[10]"Goods" are statutorily defined as "tangible chattels or real property purchased or leased for use."  Tex.Bus. & Com.Code § 17.45(1).

[11]"Services" are defined as "work, labor, or service purchased or leased for use, including services furnished in connection with the sale or repair of goods."  Tex.Bus. & Com.Code § 17.45(2).

parts business that does not compete directly with Meineke. The Jaynes do not contend that they were restricted in their use of the Meineke trademarks, logos or other symbols during the term of their licensing agreement with Meineke.

The Meineke trade and service marks at issue were registered in 1982 and 1983. Because they have been registered for over five years, they have become "incontestible," and can only be cancelled if: (1) the mark has become generic; (2) the mark was abandoned; (3) the registration was obtained fraudulently; or, (4) the mark was used to misrepresent the source of the goods or services. *See* 15 U.S.C. §§ 1064, 1065 (Supp.1993); *Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.,* 469 U.S. 189, 197, 105 S.Ct. 658, 663, 83 L.Ed.2d 582 (1985); *Selva & Sons, Inc. v. Nina Footwear, Inc.,* 705 F.2d 1316, 1326 (Fed.Cir.1983). The Appellants assert that fraud was used to register the marks under Meineke's ownership.

The evidence supporting this contention is a letter dated October 30, 1972 from Mr. Edward Bass to Mr. Sam Meineke. R. 867. It confirms that Bass agreed not to use the name "Meineke" in any fashion in any enterprise engaged in "the muffler shop business." This letter allegedly illustrates that the Appellee falsely represented to the Patent Office that it was the first to use the "Meineke" tradename.

The district court concluded that Meineke did not make false statements to the Patent Office and did not obtain the challenged registrations by fraud. R. 3040. We agree. To succeed on a claim of fraudulent registration, the challenging party must prove by clear and convincing evidence that the applicant made false statements with the intent to deceive the licensing authorities. *Money Store v. Harriscorp Finance, Inc.,* 689 F.2d 666, 670 (7th Cir.1982). The 1972 letter indicates that Messrs. Bass and Meineke reached an agreement regarding which party had the right to use the tradename "Meineke" in connection with the automotive muffler installation and repair business. R. 867. Consequently, in its application for trademark protection, Meineke truthfully stated that, in the realm of automotive muffler specialists, it was in fact the first entity to use the trade name "Meineke." *See* R. 161-62 (Nedell affidavit); R. 157 (letter from Patent Office stating that a search of the Office's records failed to show that Meineke's proposed marks resembled any registered marks "when applied

to [Meineke's] goods and/or services....").

## VI. *Attorneys' Fees and Costs*

The district court awarded Meineke $564,748 in attorneys' fees, costs and expenses. The Jaynes contest this amount, arguing that Meineke has no basis from which to claim attorney's fees. This is incorrect; Meineke has both a contractual and statutory basis from which it can claim attorneys' fees and costs.[12] The Meineke-Jaynes' licensing agreement provides that Meineke is entitled to "all costs incurred ... including, but not limited to, the cost of all telephone calls, telegrams, travel, correspondence, attorney fees and court costs." R. 45. Texas statutory law also provides for the recovery of attorneys' fees when a party prevails on a contract claim. Tex.Civ.Prac. & Rem.Code § 38.001(8) (Vernon 1986).

We are unpersuaded that the district court erred in assessing the amount of fees and costs. Counsel for Meineke submitted detailed time sheets and expense records. *See* R. 3071-3329. The Jaynes were able to lodge objections to these figures. *See* R. 3445-3471. The district court carefully considered the factors for determining attorneys' fees announced in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir.1974).

A recitation of the court's *Johnson* analysis is unnecessary, as the Appellants have identified no error in the court's calculation of the fee amount, other than to point out that the fee award is almost sixty times greater than Meineke's judgment damages. We are not unmindful of the disparity of these amounts. However, this alone will not support a reversal of the district court's decision. *See, e.g., Estate of Borst v. O'Brien,* 979 F.2d 511, 516 (7th Cir.1992) ("[A]n attorneys' fee award need not be proportionate to the damage award."); *Reneau v. Mossy Motors,* 622 F.2d 192, 196 (5th Cir.1980) ("[T]he ceiling on a client's recovery should not operate as an impenetrable barrier to reasonable compensation.").

The court properly exercised its discretion, and guided by the *Johnson* factors, assessed fees and costs against the Jaynes. We find no abuse of this discretion, and affirm. *See Fogleman v.*

---

[12]*See Tang How v. Edward J. Gerrits, Inc.,* 961 F.2d 174, 179 (11th Cir.1992) (Under "American Rule," fees not recoverable absent statute or enforceable contract between the parties.).

*Aramco,* 920 F.2d 278, 285 (5th Cir.1991) (reviewing cost award for abuse of discretion); *Reneau,* 622 F.2d at 195 (reviewing attorneys' fee award under same standard).

## VII. *Conclusion*

The Jaynes clearly breached their licensing agreement with Meineke by operating a competing business during the term of the agreement. They also violated the agreement's covenant not to operate a competing business for a period of one year within a twenty-mile radius from the former Meineke franchise after the termination of the Meineke licensing agreement. These are reasonable restrictions on competition, and are tailored to protect Meineke's legitimate business interests. The Autocare-Jaynes agreement evinced a civil conspiracy to interfere with contractual and business relations between Meineke and the Jaynes. Finally, the award of attorney's fees and costs was proper. We do not reach Meineke's conditional cross-appeal on the issue of amending the pleadings.

The judgment of the district court is AFFIRMED.