**Charles S. POLIN, Plaintiff,**

v.

**KELLWOOD COMPANY, Kellwood Sportswear, Enoch Harding, Jr., and Harry Holding, Defendants.**

**No. 93 Civ. 7876 RO.**

United States District Court,
S.D. New York.

Nov. 2, 2000.

Wisehart & Koch, New York, New York, Arthur M. Wisehart, for Plaintiff.

Morgan, Lewis & Bockius, New York, New York, Christopher A. Parlo, Steven R. Wall, Melissa C. Angeline, for Defendants.

## OPINION AND ORDER

OWEN, District Judge.

Plaintiff Charles S. Polin moves for "Reconsideration"[1] of an Opinion and Order dated June 29, 2000, and the resulting Final Order and Judgment entered on July 26, 2000, which granted defendant Kellwood's motion to confirm the arbitration award and the sanctions against plaintiff's counsel, and denied plaintiff's motions to vacate the opinion of the arbitrators.

The facts of this case are extensively set forth in my forty-four page opinion of June 29, 2000. *See Polin v. Kellwood,* 103 F.Supp.2d 238 (S.D.N.Y.2000). Briefly, this litigation started in this Court in 1993 when plaintiff, the former president of She Knows!!, a division of Kellwood, alleged that he was fraudulently induced by Kellwood to accept employment; that defendants Harding, head of Kellwood Sportswear, and Kellwood Sportswear itself, tortiously and negatively interfered with his employment relationship with Kellwood; and that Kellwood then terminated his employment in an act of wrongful age discrimination. After four years of pre-trial litigation and several discovery disputes, the parties entered into a written Arbitration Agreement and began arbitration in April 1998, and the action in this Court was placed on the suspense calender. On April 10, 1999, the panel of arbitrators issued a forty-six page opinion detailing the basis for its earlier February 8, 1999 unanimous dismissal of Polin's age discrimination and tortious interference

---

1. *See infra* p. 131–32.

claims; a 2–1 finding in favor of Kellwood on the fraudulent inducement claim; and unanimously directing Polin's counsel, Arthur M. Wisehart, for what it described as Wisehart's "misconduct . . . bad faith . . . vexatious[ness] . . . and . . . contempt of the Panel," personally to pay Kellwood for half its arbitration expenses. (Opinion of Arbitrators, Appendix B hereto, at 13).

Plaintiff Polin thereafter moved this Court to vacate the Award of Arbitrators and for the first time for an award of monetary damages against Kellwood's counsel and its law firm, Morgan, Lewis & Bockius LLP on: 1) an "entrapment" theory regarding a completely separate case Wisehart had earlier handled against Morgan Lewis, and 2) for treble-damages on an "extortion" theory for their sending a letter to Wisehart seeking payment of the arbitrators' award to them (see above).[2] Kellwood cross-moved to confirm the award. This Court's Opinion and Order of June 29, 2000, and Order and Final Judgment entered on July 26, 2000, confirmed the award and denied Polin's motions in their entirety. Plaintiff appealed to the Second Circuit on July 10, 2000. Plaintiff *thereafter* moved before me on August 9, 2000 for "Reconsideration" to correct and modify the judgment (see Appendix A hereto), and for a stay of execution pending decision on the motion. Plaintiff, however, having earlier filed a notice of appeal, this Court no longer had jurisdiction over this matter,[3] and accordingly on September 5, 2000, I denied consideration of his motions on that ground. Plaintiff then asked the Second Circuit to remand to this Court to consider his motions, which was granted on October 3, 2000. Plaintiff's motion for "Reconsideration" is now before me and I address it.

 A motion for reconsideration "may be granted only where the Court has overlooked matters or controlling decisions which might have materially influenced the earlier decision." *Digitel, Inc. v. MCI Worldcom, Inc.,* 2000 WL 1010827 (S.D.N.Y. July 21, 2000) (citing *Enzo Biochem, Inc. v. Johnson & Johnson,* 866 F.Supp. 122, 123 (S.D.N.Y.1994)). The scope of review on a motion for reconsideration is narrow, applying only to issues that the Court has already considered. It is not a substitute for appeal. *See Morales v. Quintiles Transnat'l Corp.,* 25 F.Supp.2d 369, 372 (S.D.N.Y.1998).

In light of this standard of review, I make two observations at the outset. First, it seems appropriate to repeat my prior observation that "[a]s to the panel's determination on the merits . . . there is no legal or factual basis whatever to put the panel's findings or conclusions in any question were there not a plethora of alleged collateral issues raised by Polin and Wisehart. . . ." *Polin v. Kellwood,* 103 F.Supp.2d at 247. Second, I observe that almost all of the numerous grounds asserted in this present motion have been discussed in exhaustive detail both in the Opinion of the Arbitrators and this Court's Opinion and Order of June 29, 2000 and need not be addressed further. The two issues I do address herein are those that while plaintiff did previously raise before me and I did address them, they now require further addressing because of the new ways in which plaintiff and his counsel have tried to recast and support their assertions.

The first is as follows. As explained and dealt with in my June 29, 2000 opinion, on October 23, 1998, Wisehart wrote and delivered a letter to the American Arbitration Association ("AAA") in which he asserted several highly derogatory and damaging factual statements as to the al-

---

**2.** I have already found these claims to be utterly without support. *See Polin,* 103 F.Supp.2d at 254–255.

**3.** Some authorities observe that there is limited jurisdiction to say "I deny the motion."

This, however, is not the jurisdiction movant Wisehart was looking for. *See Toliver v. County of Sullivan,* 957 F.2d 47, 49 (2d Cir. 1992); *Ryan v. U.S. Lines Co.,* 303 F.2d 430, 433–34 (2d Cir.1962).

leged conduct of the neutral arbitrator, Jonathan Liebowitz. Among them was the allegation that in an off-the-record discussion on August 8, 1998, Liebowitz "stated that if counsel for Mr. Polin states that he has not received a fair hearing, he [Liebowitz] will abandon the case and will decline to decide the dispute to be arbitrated." [4]

As to this letter, on October 28, 1998, after the close of the proof taking, the panel afforded Wisehart an opportunity to tell it the basis of his letter to the AAA. Arbitrator Kleinman, presiding since the letter attacked Liebowitz, set up the parameters of the inquiry as follows:

> ARBITRATOR KLEINMAN: The purpose [of this inquiry is that Wischart's] letter of October 23, 1998, among other things, constituted a direct attack on the integrity of the Panel and specifically Arbitrator Liebowitz, a direct attack. And that attack is based upon beliefs, according to the letter. We don't know where those beliefs came from, because it's certainly not in the record as far as an attack, why his integrity, why there should be a challenge to the fact that Arbitrator Liebowitz would rule a certain way on procedural or substantive issues because of an alleged concern that he wouldn't get paid.
>
> This is as serious an accusation that can be made against an Arbitrator or a judge, for that matter. It can't be any more serious than that. That is Mr. Liebowitz's livelihood, which is in part controlled by the American Arbitration Association. These are extremely serious allegations Mr. Wisehart has leveled against him.
>
> It is our intent to ask him why he leveled those accusations and the basis for those accusations, because we don't know what the basis of that is. To us, upon reviewing the record, we don't believe there is a basis for that. (Tr. of Oct. 29, 1998, at 35–36).

4. Other allegations in the letter (*see Polin,* 103 F.Supp.2d at 264 n. 39) were dealt with at

Wisehart's response to this was to "decline" to respond "[o]n constitutional grounds as well as jurisdictional grounds." (*Id.* at 62). At the same day's session where Wisehart declined to support the statement, Steven R. Wall, attorney for Kellwood, said, "I will state unequivocally now and under oath that that comment alleged to have been stated by Arbitrator Liebowitz did not occur, that the accusation in the letter of October 23 is a complete fabrication." (*Id.* at 47). Thereafter, *at no time before the arbitrators* did Wisehart assert in any way that the contents of his Oct. 28, 1998 letter had any basis in fact.

■ The above was the record on which the arbitrators reached their decisions. Thereupon the matter came before me on cross motions to vacate or confirm the arbitrators' ruling. One of Wisehart's *arguments* in the papers before me was that "Liebowitz's partiality is shown by his alleged August 7, 1998 threat to discontinue unless at the conclusion of the hearings Polin . . . states that he had received a full and fair hearing." In my opinion that followed, I wrote, "Since *Wisehart is the only one asserting this conversation ever took place, and he has submitted no affidavit as to its existence,* this issue is therefore not competently before me, and I decline to address it." *Polin,* 103 F.Supp 2d at 259.

Now, on the third go-around—in his motion for reconsideration—Wisehart submits an affidavit of August 9, 2000, stating under oath: "At that time [of the alleged August 7, 1998 off-the-record conversation], Arbitrator Liebowitz repeated that he would walk away from the arbitration hearing if at the conclusion of the hearing the undersigned [i.e., Wisehart] stated that Mr. Polin had not received a full and fair hearing." (Wisehart Aff. ¶ 49).

numerous other places in this Court's opinion of June 29, 2000.

 Thus, this is the first time that Wisehart has asserted this allegation under oath. Repeating, Wisehart first put this allegation in his unsworn letter to the AAA, and then invoked the Constitution when asked to explain its basis. He submitted nothing competent on the issue when before me on plaintiff's motion to vacate. Therefore, Wisehart having at two earlier stages declined the opportunity at each to put this alleged fact in issue, I decline to permit him to do so now. First, I note in passing that this is a motion for reconsideration and is limited to the record as to which reconsideration is sought. It does not permit the building of a different record (*see supra*, p. 128). But second, and of dispositive force, analogizing this to dispositive motions, the law is that a party cannot create a material issue of fact by submitting an affidavit that contradicts its own prior deposition testimony. *See, e.g., Hale v. Mann*, 219 F.3d 61, 74 (2d Cir. 2000) ("[I]t is well settled in this circuit that a party's affidavit which contradicts his own prior deposition testimony should be disregarded on a motion for summary judgment" (quoting *Mack v. United States*, 814 F.2d 120, 124 (2d Cir.1987))). The dispositive motion before me presents a situation to which this logic clearly applies. At the arbitration panel proceeding convened to determine the basis for Wisehart's allegations against Liebowitz, Wisehart declined to respond on "constitutional grounds," which I can only assume refers to the Fifth Amendment. In civil cases, a party's invoking his Fifth Amendment privilege against self-incrimination allows the court to draw an adverse inference. *See S.E.C. v. Princeton Econ. Int'l Ltd.*, 1999 WL 997149, at \*3 (S.D.N.Y.1999); *S.E.C. v. Scott*, 565 F.Supp. 1513, 1533 (S.D.N.Y.1983). I draw such an adverse inference here from Wisehart's refusal to answer the questions of Arbitrator Kleinman about the basis of his letter to the AAA. I emphasize that at the second stage when this issue was before me as part of his motion to vacate, he offered nothing there either. Now he attempts to create a

material issue of fact by putting this allegation under oath in his belated affidavit, which is in contradiction of his prior stands on this issue. In the interests of finality and fundamental fairness to Kellwood, it is simply too late for Wisehart to reverse himself to create an issue. Accordingly, I do not accept this attempt to put his allegation before me.

The second issue that I feel requires some readdressing is plaintiff's request for a jury trial on the issue of "whether the imposition of sanctions upon counsel for petitioner with the purpose and intent of retaliating against petitioner by crippling his counsel and his ability to pursue this litigation violates petitioner's right to be represented by counsel." (Pet'r Not. of Mot. dated Aug. 8, 1999). I addressed a similar contention by Wisehart in my Opinion and Order of June 29, 2000. There he contended that the "punitive award of sanctions against petitioner's counsel [Wisehart] is an attempt by respondents' counsel [Wall] in collusion with arbitrators Liebowitz and Kleinman to obstruct justice by incapacitating petitioner's counsel to make it impossible to prosecute claims for obstruction of justice...." (Pet'r Mem. of Law in Supp. dated Nov. 8, 1999, at 15). Just as there was not a scintilla of support for the earlier assertion, there is no support for the present assertion, and the present assertion begs both a similar analysis and conclusion.

 I emphasize that *it was the Panel of Arbitrators*, and not this Court, that assessed the payment of half of Kellwood's arbitration costs against Wisehart, and that even if the agreement had not endowed the panel with the power of a court, "[a]rbitration awards are subject to very limited review in order to avoid undermining the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation." *Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp.*, 103 F.3d 9, 12 (2d Cir.1997) (citation omitted). The panel went to great lengths in its opinion to

explain the factual bases for all its conclusions,[5] and I thoroughly considered plaintiff's numerous, often-repetitiously stated objections to the award in my Opinion and Order of June 29, 2000. For all of these reasons, plaintiff's attempt to reopen the issue by casting various allegations in a slightly different light is wholly without merit.

Another accusation that calls for brief re-mention is Wisehart's assertion that counsel for Kellwood destroyed evidence that was important to plaintiff's case. In his earlier motion to vacate, plaintiff asserted that Kellwood's disposal of several bolts of cloth and product samples produced by Enteks after the case was over was a deliberate destruction of relevant evidence. I noted at the time that the panel considered this claim and specifically found that the bolts of cloth and product samples were not relevant to this case. I also noted that in addition to the panel's determination, plaintiff was given an opportunity to examine the original cloth patches cut from the Enteks garment. *See Polin,* 103 F.Supp 2d at 258.

Now, in papers submitted to this Court just a few weeks ago, Wisehart attempts to reargue and aggrandize this alleged spoliation of evidence claim by asserting that "[t]he Enteks litigation is the centerpiece of Polin's tortious interference claim ..." (Pl. Rep. Mem. in Support of Stay, dated Oct. 10, 2000, at 7). But the panel did consider it, obviously with appropriate thoroughness, the panel's transcript of September 18, 1998 at 1494 reading:

> MR. WISEHART [addressing Mr. Wall, Kellwood's counsel]: "[I]n [Entek], you destroyed the samples that [Celona] turned over to you from that company. That's certainly evidence from which an adverse inference can be brought about the destruction of evidence. We're enti-

tled to have that information on the record."

ARBITRATOR LIEBOWITZ: Give us a break, will you, you made that argument in the transcript from way back. I've read every I and T and all the other letters in the alphabet in the record. We have heard that one. (Conf. Tr. of Sept. 18, 1998, at 1494).

I did not, and do not, find the panel's conclusion in its opinion—that "[the] several bolts of cloth and product samples ... were not relevant to this case, and were disposed of after unrelated litigation was settled"—unjustified in any way, and I therefore reject Wisehart's attempt to reopen an issue that was fairly decided by the panel and confirmed by this Court in a previous opinion. *See Polin,* 103 F.Supp 2d at 258.

■ I must note that on not only the record before the arbitrators, but also given the standard applicable to review,[6] these continued allegations of foul play in the panel's conduct seem to be the distressing standard of approach here. The panel's assessment of Wisehart's conduct and the remedy imposed was made on a record that factually and legally fully supported it. Further, the panel went to considerable pains to lay out the justification for its assessment:

> [T]he panel believes that it has an obligation to protect the forum. If the type of conduct engaged in by Wisehart were permitted to go unremedied, resort to arbitration to resolve employment discrimination and related claims would be discouraged. That is because parties know that a Federal Judge would be most unlikely to condone the kind of conduct in which Wisehart engaged; his approach to arbitration appears to have been that, since the arbitrators were not judges, 'anything goes.' [ ... ] If an attorney were free to disregard and

5. *See* Appendix B, pp. 34–46.

6. *See DiRussa v. Dean Witter Reynolds Inc.,* 121 F.3d 818, 821 (2d Cir.1997); *Carte*

*Blanche (Singapore) Pte., Ltd. v. Carte Blanche Intern.,* 888 F.2d 260, 265 (2d Cir.1989).

flaunt the authority of the arbitral forum, those benefits would be lost; the interest of the Federal and other courts in following the national policy of promoting arbitration as a means of resolving disputes would be frustrated. (Opinion of Arbitrators, at 33; at 3 of Appendix B hereto).

This approach by Wisehart has continued into his most-recent October 20, 2000 "Supplemental Memorandum" for which he sought and was granted leave, but which, when filed, was essentially a baseless irrelevant smearing attack on a young associate attorney for Kellwood, Melissa C. Angeline. (Pl. Supp. Mem. in Support of Stay, dated Oct. 20, 2000).

First, therein Wisehart attacks what he describes as "Relevant to the unreliability of the statements to the Court by Ms. Angeline, is that she has previously misled your Honor about its supposed lack of jurisdiction at the proceeding on September 5, 2000 ..." based upon "Ms. Angeline's insistence upon *misdescribing* petitioner's motion dated August 9, 2000, as a 'motion for *reconsideration*'" (*Id.* at 2) (emphasis supplied) when she contended I had no jurisdiction to hear his post-appeal motion.[7] But attached as Appendix A hereto is the cover sheet and page one of Wisehart's August 9, 2000 memorandum of law on this issue, both of which bear the title: "Memorandum of Law in Support of Petitioner's Motion for *Reconsideration*" (emphasis supplied). I therefore find no merit in Wisehart's claim of misdescription when Wisehart himself captioned the proceeding a "Motion for Reconsideration."

Second, and as an apparently gratuitous besmirching addendum, Wisehart asserts in these pages that

at the argument before the Second Circuit on October 3, 2000, Ms. Angeline, upon inquiry from the Court, admitted that she was not qualified under its requirements to appear before the Court, and was *admonished* not to do it again

until she is qualified to do so. (*Id.* at 3–4) (emphasis supplied).

The accusation of "admonishment" by the Court is contrary to fact, for on the tape of the argument in the Court of Appeals on that day one hears:

Ms. Angeline: Ms. Melissa Angeline from Kellwood Company.

\* \* \* \* \* \*

Judge Calabresi: I think the first thing that we must do is—you have asked to be appointed *pro hac vice?*

Ms. Angeline: Correct, your Honor.

\* \* \* \* \* \*

Judge Calabresi: have you applied for admission to the Circuit?

Ms. Angeline: I have not applied for—

Judge Calabresi:—regular—

Ms. Angeline:—regular admission. I do not meet the requirements for that.

Judge Calabresi: Well, we will grant you permission to appear pro hac vice, but as soon as you meet the requirements you should apply because when you meet the requirements and do not apply we can't generally—tend not to admit people *pro hac vice.*

Normally, I would not have ventured into the colloquially-described "he said, she said" rather irrelevant facts here. However, in this case, the attacks seemed so unfounded and unfair to Ms. Angeline that if unjustified, as it quickly developed, the record should be clear as to the propriety of her conduct as a member of the bar.

In light of the foregoing, and of all previous analysis undertaken by the panel and by this Court, plaintiffs motion for reconsideration is denied, and a further stay of execution of the judgment against Wisehart is also denied.

7. *See supra* p. 128.

*MEMORANDUM OF LAW IN SUP-PORT OF PETITIONER'S MO-TION FOR RECONSIDERATION, TO CORRECT AND MODIFY THE JUDGMENT, AND TO MAKE FINDINGS*

*Preliminary Statement*

This Memorandum of Law is respectfully submitted in support of plaintiff's motion dated August 9, 2000, for an for an Order pursuant to Rule 52(b), Rule 59, Rule 60(b)(3)(fraud and/or misconduct of adverse parties) and (6)(other reasons justifying relief from judgment), and Rule 62(b) of the Federal Rules of Civil Procedure, vacating, amending and adding to the findings in the final order and judgment thereon entered in this action on July 26, 2000, by granting discovery with regard to disputed fact issues presented by the pleadings herein, by setting down for trial before a jury, disputed factual issues as set forth in the Notice of Motion. Submitted with this Memorandum of Law is the affidavit of Arthur M. Wisehart sworn to August 9, 2000, and be granting a stay against execution of the judgment in the meantime.

## APPENDIX B

*OPINION OF ARBITRATORS*

Panel of Arbitrators:

Jonathan S. Liebowitz, Esquire, Chair

Kenneth D. Kleinman, Esquire, Member

Martin Freeman, Member

X X X

(p. 31) [1]

VI. *AWARD OF SANCTIONS AGAINST ARTHUR WISEHART, COUNSEL FOR POLIN.*

In the Panel's award of February 8, 1999, the Panel assessed one-half of the cost of the arbitration, excluding witness fees, against counsel for Polin, Arthur Wisehart, on two grounds: misconduct in connection with litigating a frivolous age discrimination claim, unduly prolonging the hearings, unjustly accusing Kellwood and its counsel of misconduct and making a false offer of proof with respect to Paul Celona: and contempt of the Panel, based on the submission to the American Arbitration Association of false and unsubstantiated statements regarding the Panel Chair. We set forth the legal authority for these sanctions, as well as the factual bases therefore, below.

A. *Legal Authority for Award of Sanctions.*

Pursuant to the Agreement to Arbitrate Dispute, executed by the parties on February 25, 1998, the instant arbitration was subject both to the terms of that Agreement and to the National Rules for the Resolution of Employment Disputes of the American Arbitration Association (the "AAA Rules"). (Agreement, ¶ 1). In the event of a conflict between the Agreement and the Rules, the Agreement would control. *Id.*

Under the Rules, the Panel has the authority to "grant any remedy or relief that the arbitrator deems just and (p. 32) equitable, including any remedy or relief that would have been available to the parties had the matter been heard in court." (Rule 32(c) of the AAA Rules). Moreover, the Rules expressly provide for the award of attorneys' fees: "The arbitrator shall have the authority to provide for the reimbursement of representative's fees, in whole or in part, as part of the remedy, in accordance with applicable law." (Rule 32(d) of the AAA Rules). Accordingly, the Panel has discretion to award appropriate relief under the circumstances of this case pursuant to the AAA Rules.

---

1. Page numbers in bold are the page numbers of the panel's forty-six page opinion.

As noted above, the Rules incorporate "applicable law," and permit the same remedies "had the matter been heard in court." The Agreement also contemplates that the Panel has the authority to "provide whatever remedies are currently available under law ..." (Agreement ¶ 7). Federal Courts generally have equitable powers to award sanctions when counsel has "acted in bad faith, vexatiously, wantonly or for oppressive reasons." *First National Supermarkets, Inc. v. Retail, Wholesale and Chain Store Food Employees Union Local 338*, 118 F.3d 892, 898 (2d Cir.1997); *Morley v. Ciba–Geigy Corp.*, 66 F.3d 21, 24 (2d Cir.1995). Rule 11 of the Federal Rules of Civil Procedure also provides authority to impose sanctions against parties and/or attorneys for the filing and continued pursuit of frivolous or wholly unsupported claims. Finally, the New York City Human Rights Law ("NYCHRL") permits the award of attorneys' fees and costs to the **(p. 33)** prevailing party in Polin's age discrimination suit, which was Kellwood. For all these reasons, the Panel believes that it has the legal authority to assess sanctions against Wisehart.

In addition, the Panel believes that it has an obligation to protect the forum. If the type of conduct engaged in by Wisehart were permitted to go unremedied, resort to arbitration to resolve employment discrimination and related claims would be discouraged. That is because parties know that a Federal Judge would be most unlikely to condone the kind of conduct in which Wisehart engaged; his approach to arbitration appears to have been that, since the arbitrators were not judges, "anything goes." The purpose of arbitration procedure in a case like this is to afford the parties the full protections of fairness, due process and orderly and expeditious procedure which they would expect were they in court. Thus, the benefits of savings in time, selection of the decision-makers by the parties, and an

enormous savings in cost over extended litigation in court, can be fully realized. If an attorney were free to disregard and flaunt the authority of the arbitral forum, those benefits would be lost: the interest of the Federal and other courts in following the national policy of promoting arbitration as a means of resolving disputes would be frustrated.

**(p. 34)** B. *Factual Bases for Assessment of Sanctions.*

1. *Attorney Misconduct.*

The record is replete with numerous examples of unprofessional and unethical behavior by Wisehart, including both false accusations and false representations. Any one of these examples could have been the basis for sanctions; when combined, they present a picture of an attorney who apparently believed that he was not bound by any rules of professional conduct, either toward the Panel or opposing counsel.

a. *False Offer of Proof of Celona.*

At the conclusion of the presentation of his case in chief on August 7, 1998, Wisehart agreed that he had presented all the witnesses he wished to present, subject to exceptions on the Panel's rulings (Tr. 1364–5). Nonetheless, as soon as counsel for Kellwood announced his intention to file a motion for judgment, Wisehart immediately complained that he was being treated unfairly because he wished to call Paul Celona, but did not because of the time constraints placed on him (Tr. 1392). The Panel reminded Wisehart that he had never been precluded from calling Celona in his case in chief (Tr. 729–30, 1393). Moreover, the parties had specifically agreed that the arbitration proceedings would not extend beyond 13 days of hearings, to conclude by October 30, 1998 (Tr. 236). Nonetheless, in an effort to be scrupulously fair, the Panel held a conference call on August 14th to permit Wisehart to present an **(p. 35)** offer of proof as to

Celona and another potential witness, Sherri Polivka.

During the conference call, Wisehart represented to the Panel that Celona would testify that Harding refused to supply pants from Rutherford, and that Holding accused Harding of "sabotaging" She Knows!! (Tr. 1413–1415). Celona allegedly also would testify that Kellwood Sportswear, located in Rutherford, either would not supply samples or patterns or that such samples or patterns were incorrect (Tr. 1412). Celona would testify that Rutherford did not want to understand the juniors market, and he obtained no responses to his requests for information and assistance (Tr. 1412–1413). Wisehart also stated that Celona would testify that Tim November, a Rutherford scheduler, specifically told him that the goods were available, but Harding would not allow them to be shipped (Tr. 1416). According to Wisehart, Celona would also state that November told him he could not do anything about the problem because he had to live with Harding, and he was frightened of Harding because of his position. *Id.* The Panel accepted this offer of proof (Tr. 1468), and considered it as part of Polin's direct case.

When determining Kellwood's motion for judgment on partial findings, the Panel assumed Wisehart's representations to be accurate, which were material factors in the Panel's decision to deny Kellwood's motion with respect to the tortious interference claim. In this offer of proof, there appeared to be **(p. 36)** potential evidence of an intentional campaign by Rutherford to harm She Knows!! by providing no assistance, samples or deliveries upon request, and by its refusal to adjust to the juniors market. Consequently, the parties returned to New York for hearings on October 26th, 27th, and 28th to hear testimony in connection with the remaining claim.

On October 28, 1998, Celona testified, and his testimony was at significant variance from Wisehart's representations. First, Celona testified that he had no personal conversation with November, but was part of a sales group conference call, at which November simply stated that Harding determines which customer gets shipped deliveries (Tr.1992). Celona did not testify as to any of the statements that Wisehart had represented November allegedly told Celona. Second, Celona testified that Holding did not believe that Harding was giving She Knows!! adequate support or attention (Tr.1984), but he made no mention of intentional "sabotage." Third, far from testifying that Rutherford gave no assistance or support, Celona testified at length that he worked with Rutherford to work out fit problems (Tr.1971) and sample problems (Tr.1975), and that She Knows!! was permitted, with Harding's endorsement, to hire a pattern maker, Ed Jenkins, to speed the process and provide better customer response (Tr.1976, 2012). He also testified that it was She Knows!!'s decision to sell a far more extensive line than simply the loafer pant, which was beyond Rutherford's ability, **(p. 37)** was not consistent with the original business plan outlined in July, 1991, and which required import sourcing (Tr.1977, 2006–2007). It was also She Knows!!'s decision to try to produce a line for late fall, 1991, which led to production problems (Tr. 2006). Finally, and significantly, Celona testified that Harding's decisions to ship one customer rather than another was simply a "senior management decision" to obtain the best "impact" of the available resources (Tr.2022).

Celona's testimony, then, presented the opposite picture than had been described by Wisehart. Rather than intentional sabotage and refusals to assist, there were substantial efforts by Rutherford to work with She Knows!! and difficult management decisions to allocate resources. Rather than showing the destruction of She Knows!! by actions of Harding, Celona testified that She Knows!! sowed its own seeds of destruction, by changing the business plan to seek earlier deliveries of far

more extensive lines. Had Celona's testimony been represented accurately by Wisehart, there would have been a substantial possibility that the tortious interference claim might have been dismissed, thus obviating the need for three additional days of hearing. Wisehart's false representations in this regard misled the Panel, were a serious breach of **(p. 38)** professional responsibility, and may well have led to significant increased expense to Kellwood.[2]

### b. *False Accusations and Other Improper Conduct.*

Aside from Wisehart's accusations against the Panel Chair, which will be set forth below, he repeatedly and without any factual foundation, falsely accused Kellwood and its counsel on inappropriate and unethical behavior, in an attempt to persuade the Panel to treat him or his client more favorably. On three different occasions, Wisehart accused Wall of improperly contacting non-party witnesses and demanded Wall's notes of his conversations. During the testimony of Barry Gussoff, Wisehart alleged that Wall and/or Kellwood "put the heat on" Alan Ziskin, to pressure him not to testify (4/1/98 Gussoff Tr. 37–41). Wisehart complained that Wall somehow "interfered" with Gussoff as well, by calling him to ask questions about the case (*Id.* at 37). During the testimony of Jeffrey Levy, Wisehart accused Wall of interfering with his testimony by telephoning him (4/3/98 Levy Tr. at 63–66). Wisehart also falsely stated in a letter dated August 19, 1998, that Wall contacted Celona on numerous occasions, that Celona objected to these calls and that Celona (p. 39) refused to speak to Wall without Wisehart's presence. Wall stated on the record that he simply left a voicemail for Celona on a single occasion (Sanctions Tr. at 54).

Each of these accusations, apparently designed to intimidate Kellwood and/or influence the Panel, were [sic] either false or not the basis for any allegation of improper conduct by Wall. There was no prohibition against Wall contacting a non-party, non-expert potential witness in order to prepare for the hearings. Wisehart's suggestions to the contrary were wholly inappropriate.

Wisehart also accused Kellwood of destroying evidence and maintaining false financial records. He stated that the She Knows!! balance sheets were "obviously manufactured document[s]." (Tr. 436). He provided no support for this serious allegation. Wisehart also alleged that Kellwood deliberately destroyed evidence, i.e., several bolts of cloth and product samples, which indeed were not relevant to the case, and were disposed of after unrelated litigation was settled (9/18/98 Conf. Tr. 16).

In an astounding display of improper conduct, Wisehart had a court reporter tape and transcribe a telephone conference on May 28, 1998 with Panel Chair Liebowitz and Wall, without either party's permission or without even informing the other parties to the conversation of his actions. Such behavior was not only unethical, it would be considered illegal in may states.

### (p. 40) c. *Undue Prolonging of Hearings.*

There were ten and one half days of testimony in this case, nine of which were devoted to Polin's case in chief or his rebuttal. The incredibly time-consuming nature of this proceeding was due in large part to Wisehart's prosecution of the case. In addition to the constant repetition of questions and reiteration of the same areas of inquiry, Wisehart continuously interposed spurious objections and utilized other tactics that unduly prolonged the pro-

---

2. Indeed, Wisehart also misrepresented the testimony of Polivka, although this had no impact on the Panel's decision, because the Panel rejected his offer of proof as to her. Nonetheless, her testimony, as shown by the Panel's discussion of the tortious interference claim, demonstrate[s] the lack of merit of that claim, rather than being supportive of Polin's position.

ceedings. Included among these actions were:

(i) Objecting during Wall's opening statement that Wall should not be permitted to utilize a demonstrative time line exhibit (4/1/98 Holding Tr. 36–37);

(ii) Seeking to have Mrs. Polin's physician testify as to the impact of Mrs. Polin's health on Polin's business venture, despite the failure to disclose such testimony in Polin's Pretrial Memorandum (4/1/98 Gussoff Tr. 27–38);

(iii) Serving pleadings on Saturday morning before a Monday hearing date to require the use of a different court reporter, and bringing his own court reporter to the hearing without authorization (Tr. 5, 10);

(iv) Seeking to have his expert, James Leonard, testify during Polin's case in chief as to the profit and loss statements of Kellwood, after having identified Leonard (**p. 41**) as an expert only as to Polin's lost earnings (Tr. 190–193, 443–444);

(v) Agreeing to a time limitation as to the length of hearings, and then asserting that such an agreement was forced upon him (Tr. 1386, 1392, 1395; 9/18/98 Conf. Tr. 32–33);

(vi) Continuously leading his own witnesses on direct examination, to the point where he appeared to be intentionally ignoring the repeated admonitions of the Panel, which finally had to preclude any follow-up questions to a leading question (Tr. 342, 1883–1886, 1889–1890, 1893, 1910, 1916, 1920, 1926–27, 1938, 1939, 1969);

(vii) Providing repetitious questioning and seeking duplicative testimony despite Panel rulings to cease (Tr. 1665, 1685–86, 1708–1709, 1715);

(viii) Seeking to have Kellwood pay for expedited transcripts, rather than normal delivery, and continuing in his demand after the Panel had ruled (8/14/98 Conf. Tr. 1470–1476; (p. 41 cont'd.) 10/21/98 Conf. Tr. 4–17);

(ix) Subpoenaing Celona as a witness in Polin's case in chief after Wisehart had already rested and the Panel had accepted his offer of proof (9/18/98 Conf. Tr. 4–31); and

(x) Submitting a dispute to the American Arbitration Association when the arbitration was by private agreement and the Association had no jurisdiction over the (**p. 42**) matter. Wisehart was fully aware of such lack of jurisdiction (10/21/98 Conf. Tr. 39).

All of these actions delayed the hearings and caused additional expense to Kellwood. They constituted unprofessional behavior and serve as a basis for sanctions against Wisehart.

d. *Frivolous Age Discrimination Claim.*

The Panel has set forth above its discussion as to the merits of Polin's age-discrimination claim. Suffice it to say that there was absolutely no basis for litigating an age discrimination claim by a plaintiff hired at age 43 and terminated two years later, with not an iota of evidence that a similarly situated younger employee was treated preferentially to Polin. Given the years of discovery and the length of the proceedings in this matter, it was unreasonable that Wisehart would continue to pursue this claim in the absence of any evidentiary support. This is a clear case for Rule 11 sanctions, as well as the award of attorney's fees to Kellwood as the prevailing parting under the NYCHRL. *See* NYCHRL Section 8–502(f). The award is necessary to demonstrate that frivolous claims brought, it appears, primarily to force a settlement may not be countenanced.

2. *Contempt of the Panel.*

The Panel also assessed fees and expenses against Wisehart because of his submission to the American Arbitration Association ("AAA") of written, false and unsubstantiated (**p. 43**) statements concerning the Panel Chair, by letter dated

October 23, 1998 (the "AAA Letter"). Arbitrators' Exhibit A, copy attached. In the AAA letter, Wisehart made the following accusations:

1. Panel Chair Liebowitz threatened to abandon the case and would decline to decide the dispute unless Wisehart agreed that he received a fair hearing;

2. Panel Chair Liebowitz had demonstrated that he was no longer "neutral" but a partisan, based on a telephonic hearing on October 21, 1998;

3. Panel Chair Liebowitz improperly received payments from Defendants, and threatened to desist from participation if timely payment were [sic] not received;

4. Panel Chair Liebowitz was unfair to Polin because he would not order daily transcripts of the proceedings;

5. Panel Chair Liebowitz's rulings were influenced by Kellwood's ability to withhold and delay payment;

6. Panel Chair Liebowitz would not agree to an extension of the proceedings because of concern of payment by Kellwood.

The AAA Letter was hand-delivered to the AAA on Friday, October 23rd, and received by Wall and the Panel on Saturday, October 24th. At the commencement of the proceedings on Monday, October 26th, the Panel advised Wisehart that it intended to hold a hearing on sanctions with respect to the AAA Letter, at the **(p. 44)** conclusion of the testimony (Tr. 1531–2). When the testimony concluded on Wednesday, October 28th, Wisehart objected to proceeding with the sanctions hearing, because his personal counsel wanted several weeks to prepare (Sanctions Tr. 6). Out of courtesy to Wisehart and his counsel, the proceedings were postponed until the following day.

On Thursday, October 29, 1998, the Panel afforded Wisehart the opportunity to explain the factual basis underlying the serious allegations contained in the letter to the AAA. He declined to do so (Sanctions Tr. 30–31, 62). After hearing argument from Wall and Wisehart's attorney, the hearing was closed.

Based on the Panel's review of the record and its recollection of the events at issue, the Panel finds the AAA Letter to contain outright falsehoods and to be a serious breach of professional ethics. Wisehart essentially accused Panel Chair Liebowitz of being improperly and unethically influenced by Kellwood's payment of fees. This is a direct attack on the Panel Chair's character and integrity, submitted to the institution which, in large part, controls his livelihood as a full-time arbitrator. Wisehart had no basis for making these statements, which were essentially designed to oust the Panel Chair from the proceedings, apparently because Wisehart believed that the Chair was not looking favorably upon his claims. At the time the letter was submitted, two of Polin's three claims had been **(p. 45)** dismissed. Had Panel Chair Liebowitz recused himself, Wisehart might have had the opportunity to retry the entire case, at substantial expense and to the detriment of Kellwood. To besmirch the good name of a highly respected arbitrator, without any factual foundation, simply for potential tactical advantage, was unconscionable.

The allegations of the letter were clearly false and known by Wisehart to be false. Panel Chair Liebowitz never stated that he would resign unless Wisehart agreed he received a fair hearing, nor did he threaten to resign if he did not receive payment. At no time did Panel Chair Liebowitz provide any basis for an assertion that he was influenced by Kellwood's payment of fees; to the contrary, both of the other Panel members, including the member selected by Wisehart, agreed that Panel Chair Liebowitz had been impartial, and according to member Freeman, had attempted to give Polin every opportunity to present his case (Sanctions Tr. 78–81). The only reason Panel Chair Liebowitz was paid by Kellwood, rather than by both Polin and

Kellwood, is that Wisehart insisted on such an arrangement as a condition to agree to arbitration (Agreement ¶ 8.2). Moreover, all decisions of the Panel were made by consensus, including the decision with respect to daily transcripts. The conference call on October 21, 1998 related to Wisehart's subpoenas of witnesses and documents as well as his request for daily transcripts, and there was no evidence during that call of any improper behavior by the Panel **(p. 46)** Chair. Finally, as noted above, the time limitations on the hearings were specifically agreed to by Wisehart and Panel Chair Liebowitz was merely honoring the agreement of the parties in declining to permit the proceedings to last beyond October 30, 1998.

For the foregoing reasons, the Panel finds that Wisehart's actions constituted misconduct, were in bad faith, vexatious and in contempt of the Panel. Accordingly sanctions were assessed against him in the amount of one-half the fees and expenses, excluding witness fees, incurred by Kellwood.