In the Matter of the Arbitration Between INTERCHEM ASIA 2000 PTE. LTD., Claimant,

v.

OCEANA PETROCHEMICALS AG, Respondent.

Oceana Petrochemicals AG, Claimant,

v.

InterChem Chemicals Pte. Ltd., Respondent.

No. 04 Civ. 8439(VM).

United States District Court, S.D. New York.

May 31, 2005.

Richard Allen Didonna, Darien, CT, for Respondent.

Joseph Austin Kilbourn, Cone & Kilbourn, Mt. Kisco, NY, for Claimant.

## DECISION AND ORDER

MARRERO, District Judge.

On October 27, 2004, InterChem Asia 2000 Pte. Ltd. and InterChem Chemicals Pte. Ltd. (collectively "InterChem") petitioned this Court to confirm an arbitration award ("Arbitration Award" or "Award") issued against Oceana Petrochemicals AG ("Oceana") following an arbitration proceeding conducted before the Hon. Harold R. Tyler, Jr. ("Arbitrator"), an arbitrator from the American Arbitration Association ("AAA"). On November 17, 2004, Oceana, on its own behalf and that of its attorney, Richard A. DiDonna ("DiDonna"), opposed

1. The Court will refer to DiDonna and Oceana collectively as Oceana, unless individual distinction is warranted.

2. The factual summary derives from the undisputed representations of the parties in their submissions. Where dispute exists or where particularly important facts are mentioned, the relevant citations to submitted materials are included.

InterChem's petition to confirm the Arbitration Award and moved to vacate the Award in part.[1] On January 6, 2005, InterChem submitted a brief in opposition to Oceana's motion. Filed with the brief were affidavits from InterChem's counsel, Joseph A. Kilbourn and John E. Cone, Jr. ("Cone"), and the Arbitrator. On January 29, 2005, DiDonna submitted an affidavit supporting Oceana's motion. Finally, on February 3, 2005, Cone filed an affidavit in support of InterChem's opposition to Oceana's motion. The parties attached exhibits from the arbitration to some of these affidavits.

Having considered these submissions, and in light of the limited scope of review afforded to district courts in confirming arbitral awards, the Court confirms the Arbitration Award in part, and grants Oceana's motion to vacate the Arbitration Award in part. Specifically, the Court confirms the Arbitration Award except to the extent that it awards attorney's fees in the amount of $70,000 against DiDonna personally.

## I. BACKGROUND[2]

Oceana and InterChem entered into a contract ("Contract") for the purchase of paraxylene, a petrochemical. As part of this transaction, InterChem was to sell Oceana 5,000 metric tons of paraxylene. Oceana asked for an expedited partial delivery of 4,000 metric tons on behalf of a customer, Polysindo, to be delivered by InterChem in Korea between April 1 and 3, 2003.[3] When InterChem tendered deliv-

3. There appears to have been some question as to whether the term for delivery was April 1–3 or April 1–5. (See Tr. at 7, 114–15 ("May 24 Tr."), attached as Ex. A to the Kilbourn Aff. in Opp'n to Cross–Motion to Vacate and In Support of Pet. to Confirm Award, dated January 4, 2005 ("Kilbourn Aff.").) As delivery of the paraxylene was completed on April 3 (see May 24 Tr. at 115), the dispute appears to be moot.

ery of the 4,000 metric tons, Oceana claimed that the shipment was late and that InterChem had, therefore, breached the Contract.

As for the remaining 1,000 metric tons, although two ships were designated by Oceana for delivery, the transaction was never completed. On May 8, 2003, Oceana notified InterChem that it would not accept delivery of the remaining 1,000 metric tons. The Arbitrator found that this cancellation by Oceana was in response to Polysindo's cancellation of that part of its order with Oceana, and not the result of any breach by InterChem.

The parties' Contract stipulated that "[a]ny controversy or claim arising out of or relating to the Contract shall be settled by arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association.... Each party consents to the non-exclusive jurisdiction of the Federal and State Courts within the State of New York." (Contract, attached as Ex. A to DiDonna's Aff. in Opp'n to Pet. to Confirm Arbitration Award and in Support of Cross–Motion to Vacate Award in Part, dated November 12, 2004 ("DiDonna Aff.")). Pursuant to this provision, Inter-Chem filed a petition for arbitration on

March 7, 2003 claiming damages for the 1,000 metric tons of paraxylene that were never picked up. Oceana filed a claim against InterChem on March 18, 2004 for damages associated with the late delivery of the 4,000 metric tons and the nondelivery of the 1,000 metric tons. The two claims were consolidated into a single proceeding by the AAA.

The arbitration was presided over by Arbitrator Harold R. Tyler, Jr., a former Judge of the United States District Court for the Southern District of New York.[4] The arbitration consisted of two hearings on May 24, 2004 and August 3, 2004. Both parties requested attorney's fees in their pleadings submitted as a part of the arbitration. (*See* InterChem's Pet. to Confirm Arbitration Award, dated October 21, 2004 ("InterChem Pet.") ¶¶ 6, 8.)[5]

During the arbitration, there arose an issue regarding document production by Oceana.[6] The Arbitrator ordered Oceana and InterChem to produce documents by April 9, 2004 in response to questions posed by InterChem to Oceana by letter dated March 24, 2004, and by Oceana to InterChem by letter dated March 31, 2004. The Arbitrator also stated in that order

---

4. There is no mention of exactly how Judge Tyler was selected as the Arbitrator save DiDonna's affidavit claiming that he was appointed by the AAA. (DiDonna Aff. ¶ 7.) The Commercial Arbitration Rules of the AAA ("AAA Commercial Rules") at Rule 11 describe how an arbitrator is selected if the parties' agreement does not describe appointment. American Arbitration Ass'n, *Commercial Arbitration Rules and Mediation Procedures* (July 1, 2003), http://www.adr.org/sp.asp?id=22440 (hereinafter "AAA Commercial Rules"). The AAA sends each party a list of ten arbitrators from the National Roster. If the parties do not agree on an arbitrator from the list, they must strike the candidates to whom they object and rank the remaining candidates. The AAA then appoints an arbitrator based on these submissions.

5. Although only InterChem made mention of these requests for attorney's fees in its submissions to the Court, Oceana's silence on the issue is interpreted as agreement with Inter-Chem's assertions, as it bears the burden of proving grounds warranting vacatur of the Arbitration Award. *See Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp.*, 103 F.3d 9, 12 (2d Cir.1997).

6. DiDonna alleges document production impropriety on the part of InterChem (*see* DiDonna Aff. ¶¶ 18, 21), however, as there is no mention of document production impropriety by InterChem in the Arbitration Award, the issue is irrelevant to the Court's confirmation of the Award.

that counsel for Oceana was "to submit in detail the exact damages and the bases therefore as sought by his client no later than Thursday, April 15, 2004." (Arbitrator's Mem. and Order, dated March 31, 2004 ("March 31st Order") ¶¶ 2, 4, attached as Ex. C to DiDonna Aff.) Oceana produced forty-three pages of documents on April 15, 2004. In response to a subsequent order by the Arbitrator on May 4, 2004 to produce all documents that the parties intended to submit at the hearing, Oceana produced an additional one hundred forty-three documents on May 17, 2004. At the May 24 Hearing, the Arbitrator requested that Oceana produce additional documents, in particular concerning damages (*see* May 24 Tr. at 320–22), which Oceana produced on June 1, 2004. (*See* DiDonna Aff. ¶¶ 28–30, Ex. G at 2–3.) Some of the documents produced on June 1, 2004 were deemed by the Arbitrator to have been highly relevant to the May 24th Hearing. (Tr. at 336–39 ("Aug. 3 Tr."), attached as Ex. B to Kilbourn Aff.; Award, Am. Arbitration Ass'n No. 50T1320043603, at 5 ("Arbitration Award"), attached to InterChem Pet.) Oceana claimed that it produced the required documents requested by InterChem, and that the documents produced by Oceana after the May 24 Hearing were not required to be produced earlier under the AAA Commercial Rules.[7] (Aug. 3 Tr. at 345–55.) The Arbitrator found that Oceana's document production prior to the May 24 Hearing was "peculiarly sparse and unrevealing," and that the production on June 1, 2004 revealed critical documents and evinced "patently dilatory and evasive document production carried out by Mr. DiDonna for his client." (Arbitration Award at 13–14.) These dilatory document production tactics served as the basis for InterChem's request for and the Arbitrator's imposition of sanctions against Oceana and DiDonna individually.

Furthermore, throughout the arbitration proceedings, the Arbitrator made remarks aimed at DiDonna and Oceana that Oceana claims were derogatory and exhibited bias. A review of the transcripts from the hearings reveals that there was a great deal of tension between the Arbitrator and DiDonna and that each made negative comments toward the other. Examples of the remarks made by the Arbitrator include calling DiDonna inexperienced and accusing him of behaving badly during the proceedings. *See infra* Part III.A. Oceana complained to the AAA on two occasions about the Arbitrator, and sought his removal as arbitrator over the matter.[8] Both of these requests were denied, and the AAA did not inform the Arbitrator of Oceana's motions for his removal.

The Arbitrator ultimately found that Oceana's claims had no merit, that InterChem's shipment of 4,000 tons was timely and that Oceana's claim likely lies not against InterChem, but against its customer, Polysindo, which had financial difficulties during the transaction and was unable to secure a timely letter of credit for the shipment. The Arbitrator also found that Oceana's post-hearing production of documents, which were deemed by the Arbitrator to have been "exceedingly important," was sanctionable conduct, and imposed

---

7. The AAA Commercial Rules at Rules 21 and 31 mandate that documents required by the arbitrator and those the parties intend to submit as hearing exhibits must be produced.

8. Oceana stated that it complained to the AAA in May 2004. (DiDonna Aff. ¶ 35.) InterChem alleges that Oceana sought the ouster of the Arbitrator twice, in July and August of 2004. (Kilbourn Aff. ¶¶ 6, 8.) Because the Arbitrator was unaware of Oceana's attempts to remove him when he rendered his award, the only issue to which this information relates is InterChem's request to this Court for additional attorney's fees, *see infra* Part III.D.

sanctions by granting InterChem's request for attorney's fees. (Arbitration Award at 12–14.)

The Arbitrator rendered his award on September 9, 2004.[9] The "Award of Arbitrator" stated that the Arbitrator, "having heard the evidence and arguments of [the] parties, . . . award[ed] the following":

(1) Oceana Petrochemicals AG shall recover no damages.

(2) Within thirty (30) days from the date of the transmittal of this Award to the parties, Oceana Petrochemicals AG shall pay to InterChem Chemicals Pte. Ltd. the sum of $405,000.00 plus interest thereon at the rate of 9% from May 8, 2003 to and including September 9, 2004.

(3) Legal fees to the extent of $70,000.00 of counsel for InterChem are to be paid by Oceana and its counsel within thirty (30) days from the date of transmittal of this Award to the parties.

(4) The compensation and expenses of the arbitrator . . . shall be borne equally by the parties. . . .

(5) The administrative fees and expenses of the [arbitration] . . . are to be borne to the extent of 75% thereof by Oceana and the balance of 25% thereof by InterChem.[10]

(Arbitration Award at 14–15.)

Oceana moved the Court to vacate the parts of the award ordering Oceana to pay damages in the amount of $405,000 plus interest to InterChem, and the $70,000 in legal fees imposed as sanctions against Oceana and DiDonna. (*See* Respondent's Mem. in Opp'n to Pet. to Confirm Arbitration Award and in Support of Cross–Motion to Vacate Award in Part, dated November 12, 2004 ("Oceana Mem.").) Oceana set out six claims in its request to vacate this award: (1) that the Arbitrator applied no known legal standard in imposing substantial sanctions, (2) that the Arbitrator did not afford Oceana and DiDonna due process prior to his imposition of substantial sanctions, (3) that sanctions should not have been awarded unless the Arbitrator found that the challenged actions were entirely without color and motivated by improper purposes, (4) that sanctions were particularly inappropriate where imposed by an arbitrator and should have been subject to judicial review, (5) that the Arbitrator was motivated by evident partiality in rendering his award, and (6) that the imposition of sanctions and damages award should be set aside due to the Arbitrator's manifest disregard for the law and the facts. (Oceana Mem. at 5–17.)

InterChem responded that (1) New York law, the AAA Commercial Arbitration Rules, and the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.,* provided the Arbitrator with the authority to impose sanctions; (2) that the sanctions imposed were justified; (3) that the Arbitrator was not partial; and (4) that Oceana's motion to vacate the award should be denied and InterChem's petition to confirm the award should be granted. (InterChem's Mem. in Support of Petition to Confirm Arbitration Award and in Opp'n of Motion to Vacate, filed on January 6, 2005 ("InterChem Mem.").) InterChem further requested that the Court grant additional legal fees in the sum of $44,625 for the cost of the Confirmation Proceedings and the costs and fees arising from responding to Ocea-

---

**9.** The Arbitration Award at 15 states that the "final Award was made on September 6, 2004," however, the Award was attested to on September 9, 2004 (*see id.* at 16), which is the date that will be used by the Court.

**10.** This unequal division of the fees was not contested by Oceana.

na's efforts to oust the Arbitrator on two occasions. (Kilbourn Aff. ¶ 15.)

## II. *APPLCABLE LAW*

### A. *JURISDICTION*

■ This Court may review a motion to confirm an arbitration award if it is filed within one year of the award:

If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected.

9 U.S.C. § 9; *Photopaint Techs., LLC v. Smartlens Corp.,* 335 F.3d 152, 158 (2d Cir.2003) ("We therefore hold that section 9 of the FAA imposes a one-year statute of limitations on the filing of a motion to confirm an arbitration award under the FAA."). This petition was filed by Inter-Chem on October 27, 2004, well within a year of the award, which was rendered on September 9, 2004. The petition is appropriately brought in this Court, as it was named in the Contract. 9 U.S.C. § 9.

### B. *CHOICE OF LAW*

■ The Court looks to the agreement of the parties to determine the matters submitted to the arbitrator for resolution and the manner in which the arbitration was to proceed. *See Security Ins. Co. of Hartford v. TIG Ins. Co.,* 360 F.3d 322, 325 (2d Cir.2004) (citing *PaineWebber, Inc. v. Bybyk,* 81 F.3d 1193, 1198 (2d Cir.1996) and *Volt Info. Sciences, Inc. v. Board of Trustees,* 489 U.S. 468, 475, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989)). The Contract states, under a section entitled "Governing Law," that the "validity[,] construction, enforceability, and performance of this Contract shall be governed by the laws of the State of New York." (*See* Contract, DiDonna Aff. Ex. A.) Under the following section, entitled "Binding Arbitration," the Contract provides that "[a]ny controversy or claim arising out of or relating to the Contract shall be settled by arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association." (*See id.*)

■ The Court is obliged to read the Contract in a way that gives effect to both of these provisions and "render[s] them consistent with each other." *Mastrobuono v. Shearson Lehman Hutton, Inc.,* 514 U.S. 52, 63–64, 115 S.Ct. 1212, 131 L.Ed.2d 76 (1995). The reading most consistent with the plain language of the agreement is that the parties intended that any disputes concerning the substance of the Contract be governed by New York law, but that as to the procedure of the arbitration and authority of the arbitrator, the AAA Commercial Rules would apply. *See Security Ins. Co.,* 360 F.3d at 327 ("[A] general choice of law provision will not be construed to impose substantive restrictions on the parties' rights under the Federal Arbitration Act.... [The Second Circuit] has rejected the argument that a general choice-of-law provision without more evidences the parties' intent to incorporate New York decisional law on the allocation of powers between the court and the arbitrator." (internal citations and quotation marks omitted)). Therefore, in deciding matters relating to the substantive merits of the action, the Court will apply New York State law, and in deciding matters of procedure or the authority of the Arbitrator, the Court will look to the AAA Commercial Rules. *Cf. Mastrobuono,* 514 U.S. at 63–64, 115 S.Ct. 1212 (considering similar contractual terms and holding that "the best way to harmonize the choice-of-law provision with the arbitration provision is to read 'the laws of the State of New York'

to encompass substantive principles that New York courts would apply, but not to include special rules limiting the authority of arbitrators. Thus, the choice-of-law provision covers the rights and duties of the parties, while the arbitration clause covers arbitration").

## C. STANDARD OF REVIEW

Arbitration awards are subject to limited review by courts in order for the benefits of arbitration, which include the avoidance of time-consuming and costly litigation, to be realized. *See, e.g., Folkways Music Publishers v. Weiss*, 989 F.2d 108, 111 (2d Cir.1993) ("Arbitration awards are subject to very limited review in order to avoid undermining the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation."); *Wedbush Morgan Sec., Inc. v. Robert W. Baird & Co.*, 320 F.Supp.2d 123 (S.D.N.Y.2004). As summarized by a leading treatise, citing the First, Seventh, Eighth, and Tenth Circuits, "the determination of the arbitrator is final and binding on the parties, even though the arbitrator may have committed a serious error of law or fact in reaching a decision." 1 Martin Domke, *On Commercial Arbitration* § 38:7 (3d ed.2003). The Second Circuit has exercised "extremely limited" review of arbitration awards in general. *See, e.g., Burns Int'l Sec. Servs. v. International Union*, 47 F.3d 14, 17 (2d Cir.1995). "[A] party moving to vacate the award has the burden of proof," *Willemijn Houdstermaatschappij*, 103 F.3d at 12, and "the showing required to avoid summary confirmation is high," *Ottley v. Schwartzberg*, 819 F.2d 373, 376 (2d Cir.1987).

However, there are limited grounds upon which an arbitration award may be overturned. Under 9 U.S.C. § 10(a), an award may be vacated under only four circumstances:

(1) where the award was procured by corruption, fraud, or undue means;

(2) where there was evident partiality or corruption in the arbitrators, or either of them;

(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

Oceana's allegation of arbitrator bias falls under 9 U.S.C. § 10(a)(2). Its claim that the Arbitrator exceeded his authority in awarding sanctions arises under 9 U.S.C. § 10(a)(4).

■ An additional ground for vacatur of an award on the basis of an arbitrator's "manifest disregard for the law" has been developed through the courts. *See Hoeft v. MVL Group, Inc.*, 343 F.3d 57, 64, 65 (2d Cir.2003). Judicial review of an award on this common law ground is "severely limited." *See id.* at 69.

## III. DISCUSSION

### A. VACATUR DUE TO ALLEGED BIAS OF THE ARBITRATOR

■ Oceana claims that the Arbitrator exhibited partiality during the arbitration in that he directed negative comments and accusations toward Oceana and DiDonna personally, and that the Court should therefore vacate the Arbitration Award. The Court may vacate an arbitration award "where there was evident partiality or corruption in the arbitrators, or either of them." 9 U.S.C. § 10(a)(2). The Second Circuit has held that "evident partiali-

ty" is "found where a reasonable person would have to conclude that an arbitrator was partial to one party to the arbitration." *Morelite Constr. Corp. v. New York City Dist. Council Carpenters Benefit Funds*, 748 F.2d 79, 84 (2d Cir.1984) (overturning an award on the basis of "[e]vident partiality" where the arbitrator's father was the Vice President and, later, the General President of the international union to which one of the parties in the arbitration was a local union, finding that a reasonable person would believe that this relationship could create partiality); *see also Lucent Techs., Inc. v. Tatung Co.*, 379 F.3d 24 (2d Cir.2004) (finding that a reasonable person would not find evident partiality where one arbitrator served as an expert witness for one of the parties in another matter, or where two arbitrators involved in the case had once co-owned an airplane together). The burden of proof falls on the party claiming bias to demonstrate that it existed. *In re Arbitration Before the New York Stock Exch., Inc.*, No. 04 Civ. 488, 2004 WL 2072460, at *6 (S.D.N.Y. Sept. 8, 2004) (citing *Willemijn Houdstermaatschappij*, 103 F.3d at 12).

Oceana cites numerous incidents that it claims reveal evident partiality, including the fact that the Arbitrator: (a) "falsely" accused Oceana of submitting evidence late when Oceana claimed that the submission consisted merely of courtesy copies of cited materials; (b) alternately berated Oceana for submitting too much and too little documentation; (c) commented on Oceana's bad "behavior"; (d) dismissed Oceana's stenographer allegedly in violation of AAA Rule 26, which allows any party to have a stenographer present at an arbitration hearing when the appropriate arrangements are made, which Oceana claims were made in this case; (e) told DiDonna not to "lecture him," that the "entire case" was DiDonna's "fault personally," and informed DiDonna that his handling of the arbitration was "grossly unfair

to the reputation of the American Arbitration Association"; (f) refused to consider case law brought up by DiDonna saying "there was not much precedent on the issue"; and (g) called DiDonna "bitter and irresponsible." (Oceana Mem. at 13–15; *see* Aug. 3 Tr. at 336–83.)

The Court is not persuaded that Oceana has met its burden to demonstrate that the Arbitrator's behavior in this case amounted to evident partiality. The Arbitrator's negative comments seem to be directed in frustration at the behavior of DiDonna, and do not demonstrate bias against Oceana's case. Furthermore, no allegations have been made that there existed a special relationship between the Arbitrator and InterChem, as was the case in *Morelite Constr. Co. See* 748 F.2d at 84. In light of the strict standard of review of arbitration awards, a reasonable person would not have to conclude on the facts before this Court that the Arbitrator was evidently partial toward InterChem. Thus, the Court denies Oceana's motion to vacate the Arbitration Award on the ground of evident partiality on the part of the Arbitrator.

## B. *VACATUR AS A RESULT OF ARBITRATOR'S MANIFEST DISREGARD FOR THE LAW AND FACTS CONCERNING THE UNIFORM COMMERCIAL CODE*

Oceana claims that the Arbitrator misapplied the New York State Uniform Commercial Code Law ("N.Y.U.C.C.") in calculating damages, as well as the AAA Commercial Rules regarding document production in deciding to impose sanctions for faulty document production. Oceana invokes the judicially created and severely limited standard of "manifest disregard for the law and facts" as a basis for vacating the award on these grounds.

In order to establish manifest disregard for the law and facts, Oceana must

prove: (1) that the governing law was "well defined, explicit, and clearly applicable"; and (2) that the Arbitrator appreciated the existence of this law but decided "to ignore or pay no attention to it."[11] *Westerbeke Corp. v. Daihatsu Motor Co.*, 304 F.3d 200, 209 (2d Cir.2002). In explaining the second prong, the Second Circuit stated: "A party seeking vacatur must therefore demonstrate that the arbitrator knew of the relevant principle, appreciated that this principle controlled the outcome of the disputed issue, and nonetheless willfully flouted the governing law by refusing to apply it." *Id.* at 217.

■ The showing required to vacate an arbitration award on the basis of manifest disregard for the law is exceptionally high. The Second Circuit has held that "[a]ny plausible reading of an award that fits within the law will sustain it." *Duferco*, 333 F.3d at 385. In *Westerbeke*, the court found that so long as an arbitral award "is at least slightly colorable, . . . [that] is all that is required given the strong presumption that the arbitrator has not acted in manifest disregard of the law." 304 F.3d at 218. Further evincing the stringent nature of this standard, within the Second Circuit, awards were vacated for manifest disregard of the law in only four out of at least forty-eight cases in which such relief was requested between 1960 and 2003. *Duferco*, 333 F.3d at 389. A mistake of law, a clear error in factfinding, or a failure to understand or apply law appropriately is insufficient to justify disturbing an arbitration award. *GMS Group LLC v. Benderson*, 326 F.3d 75, 77–78 (2d Cir. 2003).

As an example, in *Westerbeke*, the Second Circuit refused to uphold the vacatur of an arbitration award, and held that the arbitrator did not act in manifest disregard of New York law when he awarded expectancy damages for breach of contract. 304 F.3d at 218. The court emphasized the limited review available under this doctrine, noting that "[t]he arbitrator's factual findings and contractual interpretation are not subject to judicial challenge, particularly on our limited review of whether the arbitrator manifestly disregarded the law." *Id.* at 214. The Second Circuit found that the law was not "well defined, explicit, and clearly applicable," as the facts underlying the relevant precedent were distinguishable. *Id.* at 216–17. The court further noted that, even if the law had been "clearly applicable," there was no evidence of intent on the part of the arbitrator, such that the second prong of the analysis was met. *Id.* at 218 ("Daihatsu cannot prove that the arbitrator appreciated that the [relevant precedent] controlled the damages issue and that he nonetheless intended to ignore it.").

### 1. Manifest Disregard of the N.Y. U.C.C.

■ Oceana claims that it presented applicable case law on the N.Y. U.C.C. that the Arbitrator refused to apply in rendering his decision. In particular, Oceana

---

**11.** The Second Circuit expressed the standard for determining whether the arbitrator exhibited manifest disregard for the law as a three part test in *Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S*, 333 F.3d 383, 389–90 (2d Cir.2003). The first stage of the analysis concerned "whether the law that was allegedly ignored was clear, and in fact explicitly applicable to the matter before the arbitrators." The second involved determining whether the law was improperly applied, leading to an erroneous outcome. The third step asked the court to look at the "knowledge actually possessed by the arbitrators," meaning whether the arbitrator knew of the law's existence and its applicability to the case. *Id.* Several recent Second Circuit opinions, however, have continued to apply the *Westerbeke* two-part analysis to arbitration awards. *See, e.g., Wallace v. Buttar*, 378 F.3d 182, 189 (2d Cir.2004); *Hoeft v. MVL Group, Inc.*, 343 F.3d 57, 69 (2d Cir.2003).

notes that it argued during the arbitration that the N.Y. U.C.C. "did not support the damages and other legal positions advanced by InterChem" and that InterChem did not mitigate its damages appropriately under the N.Y. U.C.C.[12] (Oceana Mem. at 4, 16.) Oceana essentially disagrees with the Arbitrator's decision to apply the market price on the date of Oceana's repudiation, as opposed to the date of tender, of the 1,000 tons of paraxylene remaining on the contract in calculating InterChem's damages for Oceana's breach. (See Aug. 3 Tr. at 359–73; DiDonna Aff. ¶¶ 64, 67–68, 79.)

To determine whether this decision constituted a manifest disregard of the law and facts, the Court must first consider whether the law on this issue was "well defined, explicit, and clearly applicable." Westerbeke, 304 F.3d at 209. N.Y. U.C.C. § 2–708, which was applied by the Arbitrator in rendering his award (see Arbitration Award at 11), states, in pertinent part, that "the measure of damages for non-acceptance or repudiation by the buyer is the difference between the market price at the time and place for tender and the unpaid contract price." N.Y. U.C.C. Law § 2–708(1). Neither party contested the application of § 2–708 to the calculation of damages. (See Aug. 3 Tr. at 363, 374.)

The issue for the Arbitrator in assessing the measure of damages under this provision was what date constituted "the time and place for tender," and thus what price was to be applied as the "market price." (See id. at 356–57.) InterChem presented one case that applied the market price at the time the buyer rejected the goods in calculating damages under § 2–708. Oceana presented a different case, (see DiDonna Aff. ¶ 64 n. 1), which held that "where damages are awarded after the time for full performance ... the calculation of damages under section 2–708(1) should reflect the actual market price at each successive date when tender was to have been made under the repudiated installment contract." Trans World Metals, Inc. v. Southwire Co., 769 F.2d 902, 909 (2d Cir. 1985) (emphasis in original). The Arbitrator used the date of Oceana's repudiation for the date of tender stated in § 2–708, and applied the market price on that date in calculating InterChem's damage award. (See Arbitration Award at 11, citing Integrated Circuits Unlimited v. E.F. Johnson Co., 875 F.2d 1040, 1043 (2d Cir.1989).)

The Court's review of this decision by the Arbitrator for manifest disregard of the law is severely limited, and as long as the Arbitrator's decision to apply the market price on the date of Oceana's repudiation is at least slightly colorable, the Arbitration Award will be confirmed. Here, Oceana and InterChem disagreed as to whether a tender had ever been made.[13]

---

12. It is not clear on what basis Oceana claims that InterChem had a duty to mitigate its losses as to the 1,000 metric tons of paraxylene. DiDonna claimed at the August 3 Hearing that New York "general case law," and not the N.Y. U.C.C., requires a duty of mitigation under the "doctrine of avoidable consequences." (Aug. 3 Tr. at 374–77.) However, § 2–708(1) does not require a seller to prove mitigation to recover damages. See N.Y. U.C.C. Law § 2–708(1). Furthermore, InterChem did not have a duty to mitigate prior to May 8, 2003 because Oceana had not clearly indicated its intent to repudiate the agreement as to the 1,000 metric tons prior to that

date. See 1–4 Commercial Damages § 4.07 (Charles L. Knapp et al. eds., 2005) ("The plaintiff cannot be expected to mitigate damages until it has sufficient knowledge of the defendant's actual or prospective nonperformance and the likely consequences thereof to make mitigating measures reasonably necessary.").

13. Tender under the N.Y. U.C.C. is defined as when "the seller put[s] and hold[s] conforming goods at the buyer's disposition and give[s] the buyer any notification reasonably necessary to enable him to take delivery." N.Y. U.C.C. Law § 2–503(1).

(*See* May 24 Tr. at 14–16; Aug. 3 Tr. at 359–61, 364–65.) The evidence shows that InterChem waited for Oceana to set a firm date on which InterChem was to tender the remaining 1,000 tons; that Oceana selected two vessels for the delivery, but that delivery did not go through with either of those ships; that InterChem continued to inquire with Oceana as to when delivery would take place; and that finally Oceana cancelled the shipment as a result of its customer's cancellation of the purchase. The law in such a situation is not "well-defined" or "explicit," and, as the Arbitrator noted (*see* Aug. 3 Tr. at 359, 370), there appears to be a paucity of precedent on the issue of recovery under § 2–708 where there is no specific date of tender. There is, however, support in the case law for using the date of repudiation in calculating damages under § 2–708(1) under these circumstances, *see Integrated Circuits*, 875 F.2d at 1043; *Lomas & Nettleton Co. v. Central Fed. Sav. & Loan Ass'n*, No. 80 Civ. 975, 1983 U.S. Dist. LEXIS 19087, at *6–*7 (S.D.N.Y. Feb. 22, 1983) (concluding that, as no tender was never made on the contract, damages under § 2–708 were calculated from the date of repudiation), which is what the Arbitrator did in this case. *See also* N.Y. U.C.C. Law § 1–106 ("The remedies provided by this Act shall be liberally administered to the end that the aggrieved party may be put in as good a position as if the other party had fully performed."). The Arbitrator's interpretation of the facts and the law as he found them, therefore, was "at least slightly colorable, which is all that is required." *See Westerbeke*, 304 F.3d at 218.

The Court need not consider the second prong of the *Westerbeke* analysis, as the first prong has not been met by Oceana. *See id.* at 209 ("Both of these prongs must be met before a court may find that there has been a manifest disregard of law."). However, it is noteworthy that there is no evidence that the Arbitrator appreciated the existence of a clearly governing legal principle and decided to "ignore or pay no attention to it." *Id.* The Arbitrator noted several times on the record that there was a paucity of precedent on the issue of how to calculate the market price in circumstances similar to those in this case. (*See, e.g.*, Aug. 3 Tr. at 359 ("If I deal with the thousand metric tons, I would like to know the appropriate measure of damages, and as [Mr. Cone] has pointed out, there is not an awful lot on this and you both have submitted cases . . . ."); *id.* at 370 ("[The N.Y. U.C.C.] does not solve everything. . . . There are other things here which overcome it.").) In an attempt to resolve this apparent lack of guidance from the courts on the issue, the Arbitrator solicited and considered the positions of both Oceana and InterChem as to the correct calculation of the market price, reviewed the cases presented by both sides which allegedly supported their positions, and discussed the parties' arguments in the Arbitration Award. (*See* Arbitration Award at 11.) Certainly, there is no evidence that the Arbitrator ignored the principles of law identified by Oceana; the Arbitrator merely adopted an alternative interpretation of the facts and the law. Oceana, therefore, has failed to make out a claim that the Arbitrator manifestly disregarded the law on this issue.

2. *Manifest Disregard of the AAA Commercial Rules Regarding Discovery Procedures*

Oceana also claims that the Arbitrator exhibited manifest disregard for the law in finding that it violated the Arbitrator's discovery orders. Oceana argues that it produced documents in accordance with the AAA Commercial Rules, that it made the Arbitrator aware of those Rules, and that the Arbitrator nevertheless refused to apply them and erroneously found that Oceana violated its discovery obligations.

■■■■ The handling of procedure during an arbitration is committed to the discretion of the arbitrator. *See International Longshoremen's Ass'n v. W. Gulf Mar. Ass'n,* 605 F.Supp. 723, 727 (S.D.N.Y.1985) ("Resolution of the procedural matters arising out of arbitration are generally left to the arbitrator."). Indeed, the AAA Commercial Rules at Rule 30(a) provide that "[t]he arbitrator has the discretion to vary [the rules of procedure for the arbitration], provided that the parties are treated with equality and that each party has the right to be heard and is given a fair opportunity to present its case." The Arbitrator's decisions regarding procedure cannot have been made contrary to any "well-defined, explicit, and clearly applicable" law, as any and all decisions concerning the procedure of the arbitration, including any discovery procedures, were well within the Arbitrator's discretion. Oceana, therefore, has failed to establish the first prong required to vacate an award for manifest disregard of the law.

■■■ [11] Moreover, an award may be vacated on the basis of the arbitrator's handling of the arbitration procedure only where the arbitrator's procedures discriminated against one party or failed to give a party a fair opportunity to present its case. *See id.; International Longshoremen's Ass'n,* 605 F.Supp. at 727 ("An arbitrator's ruling on procedural issues will not be overturned . . . unless it had the effect of denying the parties a fundamentally fair hearing, or was otherwise an unreasonable decision that prejudiced the rights of a party."). Neither the Arbitrator's discovery procedures nor his finding in this case that Oceana violated his discovery orders denied Oceana a fair hearing or prejudiced its rights in the arbitration, and thus this Court is bound to uphold the Arbitrator's actions. Therefore, the Court does not find Oceana's contention that the award be vacated for the Arbitrator's manifest disregard of the AAA document production rules persuasive.

### C. VACATUR AS A RESULT OF THE ARBITRATOR EXCEEDING HIS AUTHORITY IN AWARDING SANCTIONS

Oceana contests the imposition of sanctions on both it and DiDonna in the form of legal fees as part of the Arbitrator's Award, alleging that the award of sanctions was outside the Arbitrator's authority. Vacatur is appropriate "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject was not made." 9 U.S.C. § 10(a)(4). However, vacatur based on an arbitrator's having exceeded his powers is rare. Indeed, the Second Circuit has "consistently accorded the narrowest of readings to the Arbitration Act's authorization to vacate awards where the arbitrators exceeded their powers." *In re Andros Compania Maritima, S.A., Marc Rich & Co., A.G.,* 579 F.2d 691, 703 (2d Cir.1978) (internal citations, quotation marks and alterations omitted); *see also* Andrew M. Campbell, Annotation, *Construction and Application of § 10(A)(4) of Federal Arbitration Act (9 U.S.C.A. § 10(A)(4)) Providing for Vacating of Arbitration Awards Where Arbitrators Exceed or Imperfectly Execute Powers,* 136 A.L.R. Fed. 183 § 2(a), 1997 WL 260170 (1997) ("Courts have occasionally vacated the awards in commercial arbitrations on the grounds that the arbitrators have exceeded their powers in granting remedies which they were not authorized to grant. Generally, however, the courts have been reluctant to vacate commercial arbitration awards on this ground, especially where there is no express restriction on the remedies an arbitrator is authorized to award in the arbitration agreement."). The Court's "inquiry under § 10(a)(4) . . .

focuses on whether the arbitrator[ ] had the power, based on the parties' submissions or the arbitration agreement, to reach a certain issue, not whether the arbitrator[ ] correctly decided that issue." *Westerbeke,* 304 F.3d at 220 (internal quotation marks omitted).

■■■ Concerning how to determine the scope of an arbitrator's authority, the Second Circuit has stated that

> The scope of authority of arbitrators generally depends on the intention of the parties to an arbitration, and is determined by the agreement or submission. . . . Such an agreement or submission serves not only to define, but to circumscribe, the authority of arbitrators. . . . If it is clear that the arbitrator has exceeded his authority, the award cannot stand.

*Local 1199, Hosp. & Health Care Employees Union v. Brooks Drug Co.,* 956 F.2d 22, 25 (2d Cir.1992) (internal citations and quotation marks omitted). Where the arbitrator acted within his authority in making an award, however, the "arbitration award must be upheld when the arbitrator offer[s] even a barely colorable justification for the outcome reached. . . . As long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." *187 Concourse Assocs. v. Fishman,* 399 F.3d 524, 526 (2d Cir.2005) (internal citations and quotation marks omitted; alteration in original).

The Arbitration Award notes that Inter-Chem sought the imposition of sanctions in this matter for DiDonna's "peculiar and extremely harmful dealing with documents in the case" (Arbitration Award at 12), although InterChem's request is not contained in the documents or transcripts submitted to the Court in the matter. During the August 3 Hearing, the Arbitrator stat-ed his intention to impose sanctions on both DiDonna and Oceana as a result of their late production of documents. He noted that the

> American Arbitration Association rules for so-called international cases do not contain anything about sanctions. However, I took the liberty of talking to a ranking officer of the American Arbitration Association and he agrees with me that from time to time sanctions have been awarded in cases.

(Aug. 3 Tr. at 341.) The Arbitrator stated at the hearing that he was contemplating imposing sanctions in the form of having DiDonna and Oceana pay two-thirds of the arbitration costs, including his fee. (*Id.* at 342.) InterChem's counsel reminded the Arbitrator that it had requested attorney's fees in its pleadings. (*Id.* at 343.) DiDonna asked for the opportunity to respond to this announcement by the Arbitrator, but was denied such formal opportunity. (*Id.* at 342–45.) DiDonna and the Arbitrator had an extensive discussion about whether the documents were in fact produced late and in violation of the AAA Commercial Rules and the Arbitrator's order. (*Id.* at 345–55.) The Arbitrator, however, did not allow DiDonna to specifically contest his decision to award sanctions.

In his Award, the Arbitrator noted that he had no precedent to cite that supported his authority to impose sanctions:

> it is to be noted that the current American Arbitration Association International Rules are silent on the question of sanctions. On the other hand, I take notice that as a general matter there have been sanctions imposed in AAA cases here in New York. Inquiry of AAA officials by me indicate that if a party or its counsel in a case like this seeks sanctions, it is within the discretion of the arbitrator to decide that question or matter.

(Arbitration Award at 12.) The Award fails to include a citation to the New York AAA cases to which the Arbitrator referred. The Arbitrator nonetheless imposed sanctions in the form of granting InterChem's request for legal fees in the amount of $70,000, based on the records of InterChem's legal fees incurred as a part of the arbitration, to be paid by Oceana and DiDonna. (*Id.* at 14.) The Court will consider the imposition of sanctions on Oceana and DiDonna separately.

### 1. *The Award of Attorney's Fees as to Oceana*

■ The Court's abalysis of this issue as to Oceana need not focus on the thorny question of the Arbitrator's authority to sanction Oceana. The Court's "inquiry under § 10(a)(4) ... focuses on whether the arbitrator[ ] had the power, based on the parties' submissions or the arbitration agreement, to reach a certain issue, not whether the arbitrator[ ] correctly decided that issue." *Westerbeke,* 304 F.3d at 220 (internal quotation marks omitted). Both parties in their submissions to the arbitration requested attorney's fees, and therefore the Arbitrator was authorized to grant InterChem's request for fees in his Award. *See* AAA Commercial Rules, Rule 43(d)(2) ("[A]n award of attorneys' fees [may be rendered] if all parties have requested such an award ...."); *see also Prudential–Bache Sec., Inc. v. Tanner,* 72 F.3d 234, 243 (1st Cir.1995) (finding that where both parties requested attorney's fees from the arbitration panel, the awarding of fees was within the scope of the agreement to arbitrate); *Spector v. Torenberg,* 852 F.Supp. 201, 210 (S.D.N.Y.1994) (considering New York State law and affirming an arbitration award that included an assessment of attorney's fees, noting that "[i]n the instant case, petitioners agreed to the award of such fees by placing a request for 'reasonable attorney's fees' in their demand for arbitration," and

that the petitioners also requested the award of attorney fees in their post-hearing briefs and did not object to the award of fees during final arguments); *In re United States Offshore, Inc. and Seabulk Offshore Ltd.,* 753 F.Supp. 86, 92 (S.D.N.Y. 1990) ("If both parties sought attorney's fees, as was apparently the case here, then both parties agreed *pro tanto* to submit that issue to arbitration, and the arbitrators had jurisdiction to consider that issue and to award them."). The Court thus finds that the award of attorney's fees as to Oceana was within the scope of the Arbitrator's authority.

The Arbitrator's reference in one part of the Arbitration Award to his award of attorney's fees as an imposition of sanctions does not change the fact that such an award was within the scope of the Arbitrator's authority. The Second Circuit has stated that "[e]ven absent a plausible reading free of error, we would confirm the award if we independently found legal grounds to do so." *Duferco,* 333 F.3d at 392; *cf. Westerbeke,* 304 F.3d at 212 n. 8 ("[W]e cannot postulate a colorable justification for the arbitrator's decision if that justification is clearly contrary to the reasoning actually offered by the arbitrator.... [However], where the arbitral tribunal has handed down an opinion open to more than one possible reading, we will confirm the award so long as, under one of these readings, the judgment rests upon a colorable interpretation of law."). The Arbitration Award lists the award of attorney's fees in the section entitled "Award of the Arbitrator" simply as "Legal fees," not as sanctions. Additionally, in the section of the Award entitled "Sanctions," the Arbitrator (i) refers to the sanctions as the granting of InterChem's request for legal fees, (ii) indicates the total amount of attorney's fees submitted by InterChem in its request for fees and fixes a portion of that amount as the amount of the sanc-

tions, and (iii) refers to the award as being compensatory to InterChem. (*See* Arbitration Award at 14.) The Court finds that one plausible reading of the Award, therefore, is that the Arbitrator sought to award attorney's fees in this matter pursuant to the parties' consent, regardless of whether the fees were categorized as sanctions. Under this interpretation of the Award, the grant of attorney's fees need not be vacated so long as it was within the Arbitrator's authority to award attorney's fees. As stated previously, the Court finds that the awarding of attorney's was within the Arbitrator's authority.

Although the Court's analysis under § 10(a)(4) is merely concerned with whether the Arbitrator had the authority to make the award, *see Westerbeke*, 304 F.3d at 220, because of the broad nature of the objections raised by Oceana to the Arbitrator's award of attorney's fees, including that the award of sanctions was made in manifest disregard of the law, the Court sees fit to address the propriety of the award in this case. Attorney's fees are normally not shifted onto a party under the "American Rule" that parties are to bear their own costs in litigation. *See Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 602, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001) ("In the United States, parties are ordinarily required to bear their own attorney's fees—the prevailing party is not entitled to collect from the loser."); *Todd Shipyards Corp. v. Cunard Line, Ltd.*, 943 F.2d 1056, 1064 (9th Cir.1991). However, despite the "American Rule," under some circumstances, the losing party can be assessed attorney fees where that party "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *See Todd Shipyards Corp.*, 943 F.2d at 1064 (holding that "[i]n light of the broad power of arbitrators to fashion appropriate remedies and the accepted 'bad faith conduct' exception to the American Rule, we hold that it was

within the power of the arbitration panel in this case to award attorneys' fees"); *Domke* §§ 35:8, 35:7; Ian R. MacNeil et al., *Federal Arbitration Law* § 36.8.4, at 36:79, 36:81–:82 (1999). An arbitrator's determination that a party acted in bad faith is subject to limited review. *Todd Shipyards Corp.*, 943 F.2d at 1064 (stating that "[t]he bad faith finding here was based on facts within the sole purview of the panel, and this court cannot disturb that determination unless the panel acted in manifest disregard of law").

In this case, although the Arbitrator did not use the term "bad faith" in imposing an award of attorney's fees against Oceana and DiDonna and said that he did not think that DiDonna was "malevolent," he accused Oceana and DiDonna of evasive and dilatory document production and of treating their opponent and the Arbitrator "unfairly." These statements can be interpreted as a charge of bad faith justifying the shifting of fees to Oceana. Although Oceana contests the finding of the Arbitrator that it did not comply with the AAA Commercial Rules for document production, *see supra* Part III.B.2, this Court is not authorized to revisit the factual and legal findings of the arbitrator where those findings are at least "barely colorable," as they are here. *See Westerbeke*, 304 F.3d at 212. Therefore, the Court finds that the award of attorney's fees against Oceana was within the Arbitrator's authority and does not warrant vacatur of the award.

### 2. The Award of Attorney's Fees as to DiDonna

■ Although the Court finds support for the proposition that the Arbitrator acted within the scope of his authority in awarding attorney's fees against Oceana, the Court finds that the Arbitrator did not have the authority to award these fees against DiDonna personally. The Court

cannot identify, nor did the Arbitrator provide, any authority that supports an arbitrator's ability to award attorney's fees against an attorney appearing before him. While a *court* clearly can award attorney's fees against an attorney as a sanction in certain circumstances, there is no authority supporting the Arbitrator's decision to sanction DiDonna in this case.

In stating this proposition, the Court recognizes that some courts have stated support for the proposition that an arbitrator can award sanctions; however, these cases do not control the Court's analysis because either (1) the court's pronouncements in those cases were dicta, *see, e.g., Bigge Crane & Rigging Co. v. Docutel Corp.*, 371 F.Supp. 240, 246 (E.D.N.Y.1973) (noting that "arbitrators . . . may be able to devise sanctions if they find that [a defendant] has impeded or complicated their task by refusing to cooperate in pretrial disclosure of relevant matters," but without further explanation or citation); *see also Forsythe Int'l, S.A. v. Gibbs Oil Co. of Texas*, 915 F.2d 1017, 1023 n. 8 (5th Cir.1990) (stating that "[a]rbitrators may, for example, devise appropriate sanctions for abuse of the arbitration process," and citing only *Bigge Crane & Rigging*); *Pisciotta v. Shearson Lehman Bros., Inc.*, 629 A.2d 520, 524 (D.C.1993) (noting that "[c]ourts have recognized the authority of arbitrators to impose sanctions, presumably including costs and attorney's fees, for misconduct such as discovery abuses revealed during the arbitration proceeding," and citing *Forsythe* and *Bigge Crane & Rigging*), or (2) are distinguishable from the facts of this case, *see, e.g., Polin v. Kellwood*, 103 F.Supp.2d 238, 264–65 (S.D.N.Y.2000) (*"Polin I"*) (finding that arbitrators, who were authorized under the AAA National Rules for the Resolution of Employment Disputes to grant any relief "that would have been available to the parties had the matter been heard in court," acted within the scope of their authority in awarding sanctions against an attorney); *First Preservation Capital v. Smith Barney, Harris Upham & Co.*, 939 F.Supp. 1559, 1565, 1567 (S.D.Fla.1996) (considering an arbitration governed by the National Association of Securities Dealers' code of arbitration and stating "[t]he Court also believes that arbitrators have the power to formulate appropriate sanctions stemming from their considerable control over process," without citing authority for the proposition).

Furthermore, although there may exist some circumstances where it would be within the scope of an arbitrator's authority to award sanctions, the Court must look to the "authority that inheres in the FAA itself and the arbitration contract as construed in light of FAA policy" to determine whether the sanctions awarded against DiDonna in this matter exceeded the Arbitrator's authority. *Certain Underwriters at Lloyd's, London v. Argonaut Ins. Co.*, 264 F.Supp.2d 926, 943 (N.D.Cal.2003) (hereinafter *"Argonaut Ins."*); *see Local 1199, Hosp. & Health Care Employees Union*, 956 F.2d at 25; *Ottley*, 819 F.2d at 376 ("The scope of authority of arbitrators generally depends on the intention of the parties to an arbitration, and is determined by the agreement or submission. Such an agreement or submission serves not only to define, but to circumscribe, the authority of arbitrators." (internal quotation marks omitted)). In this case, neither the Arbitration Agreement between the parties nor the AAA Commercial Rules provided for the awarding of sanctions by the Arbitrator. (*See* Oceana Mem. at 8.) The Arbitration Agreement between the parties stated, in pertinent part:

> BINDING ARBITRATION: Any controversy or claim arising out of or relating to the Contract shall be settled by arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association.

(Contract, DiDonna Aff. Ex. A.) AAA Commercial Rule 43(a) explains that "[t]he arbitrator may grant any remedy or relief that the arbitrator deems just and equitable and within the scope of the agreement of the parties." While the parties both requested attorney's fees in this arbitration, it seems implausible to construe that request to imply that the parties were authorizing the Arbitrator to award attorney's fees against the attorneys individually. It would thus appear that neither the agreement between Oceana and Inter-Chem nor the particular AAA Commercial Rules incorporated into the agreement authorized the Arbitrator to award sanctions against either of the attorneys.

The Arbitrator's only statement in the Award concerning his authority to sanction DiDonna was that he was under the impression that sanctions had been awarded in arbitrations in New York in the past where one party requests their award, as InterChem had in this case. (Arbitration Award at 12.) InterChem argues in support of the Award that the Southern District has upheld an arbitrator's imposition of sanctions on an individual attorney, citing *Polin I*, 103 F.Supp.2d 238.[14] (*See* InterChem Mem. at 8.)[15] The distinguishing features of the *Polin* decision, however, counsel against applying that court's

logic to the case at bar. The parties agreement in *Polin* granted the arbitrator the authority to provide any remedies available under law. Rule 32(c) of the National Rules for the Resolution of Employment Disputes of the AAA ("Rule 32(c)"), now Rule 34(d), which governed the arbitration, gave the arbitrators in *Polin* the authority to "grant any remedy or relief that the arbitrator deem[ed] just and equitable, including any remedy or relief that would have been available to the parties had the matter been heard in court." *See Polin v. Kellwood Co.*, 132 F.Supp.2d 126, 134 (S.D.N.Y.2000) (*"Polin II"*). The arbitrators' opinion cited *First Nat'l Supermarkets, Inc. v. Retail, Wholesale & Chain Store Food Employees Union Local 338*, 118 F.3d 892, 898 (2d Cir.1997), for the proposition that federal courts can award sanctions when counsel acts in bad faith, and Federal Rule of Civil Procedure 11 for the authority to impose sanctions against both parties and their attorneys for filing frivolous claims. *Polin II*, 132 F.Supp.2d at 134. The arbitrators found that the extreme and egregious conduct of Polin's attorney justified the imposition of sanctions against the attorney personally in the amount of half the costs of the arbitration excluding witness fees. *Id.* at 133. The imposition of sanctions was up-

---

14. InterChem cites two unpublished cases in addition to *Polin* in support of its contention that the sanctions awarded in this case were within the Arbitrator's authority. (*See* Inter-Chem Mem. at 9–10 (citing Magistrate Judge Pitman's opinion in *PHLO Corp. v. Stevens*, No. 00 Civ. 3619, 2001 WL 1398652, at *1 (S.D.N.Y. Nov. 9, 2001) and *Herrera v. Clipper Group, L.P.*, Nos. 97 Civ. 560, 97 Civ. 561, 1998 WL 229499, at *1–*3 (S.D.N.Y. May 6, 1998).)) Neither of these cases, however, is relevant to the Court's analysis because they both concern the authority of the *court* to award sanctions, as opposed to an arbitrator's authority.

15. InterChem cites N.Y. C.P.L.R. § 8303–a as support for the proposition that New York

law allows courts to impose sanctions. (InterChem Mem. at 7.) This provision relates to actions to "recover damages for personal injury, injury to property or wrongful death, or an action brought by the individual who committed a crime against the victim of the crime" and that are found "to be frivolous by the court." N.Y. C.P.L.R. § 8303–a. The Court noted in Part II.B that the procedure of the Arbitration was governed by federal law, not state law. Even if the Court applied state law, however, this statute would not be applicable to the Court's analysis, as this case is a contract case and there has been no assertion that Oceana's claims were frivolous. Additionally, the statute makes mention only of the *court's* authority to award fees, not an arbitrator's.

held as being within the arbitrators' authority. *See Polin I,* 103 F.Supp.2d at 264–65; *Polin II,* 132 F.Supp.2d at 132 (denying motion for reconsideration), *aff'd, Polin v. Wisehart,* 34 Fed.Appx. 406, 406–07 (2d Cir.2002).

In contrast, in the present case, the parties' agreement did not explicitly grant the Arbitrator power to afford any remedy available in the courts. The arbitration between Oceana and InterChem was governed by the AAA Commercial Rules, which limit the scope of an arbitrator's authority to the "scope of the agreement of the parties." *See* Rule 43(a). The agreement of the parties nowhere mentioned the imposition of sanctions, or the applicability of the Federal Rules of Civil Procedure for imposing sanctions. This significant difference suggests that *Polin* does not support the imposition of sanctions on DiDonna.

The arbitrators in *Polin* also stated as a basis for their decision to impose sanctions on the attorney that they had "an obligation to protect the forum," or, stated differently, inherent equitable authority to award sanctions. *See Polin II,* 132 F.Supp.2d at 134. "A court may, pursuant to its inherent equitable powers, assess attorneys' fees and costs when a party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *First Nat'l Supermarkets,* 118 F.3d at 898 (quoting *Chambers v. NASCO, Inc.,* 501 U.S. 32, 45–46, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991)). This inherent power derives from "'the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" *Chambers,* 501 U.S. at 43, 111 S.Ct. 2123 (quoting *Link v. Wabash R. Co.,* 370 U.S. 626, 630–31, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962)); *see also Chambers,* 501 U.S. at 46, 111 S.Ct. 2123 ("The imposition of sanctions [where a party has acted in bad faith] transcends a court's equi-

table power concerning relations between the parties and reaches a court's inherent power to police itself, thus serving the dual purpose of vindicating judicial authority without resort to the more drastic sanctions available for contempt of court and making the prevailing party whole for expenses caused by his opponent's obstinacy." (internal quotation marks omitted)). However, the arbitrators in *Polin* failed to cite any precedent to support the premise that an *arbitrator* has the inherent authority to award sanctions, and this Court similarly was unable to uncover any such authority. *Cf. Argonaut Ins.,* 264 F.Supp.2d at 944 (denying the argument that an arbitrator has the inherent authority to impose a sanction akin to a civil contempt order).

Additionally, finding that the Arbitrator had inherent authority to sanction DiDonna would directly contradict the principle that an arbitrator's authority is circumscribed by the agreement of the parties. That principle flows from the basic understanding that arbitration is a consensual arrangement meant to reflect a mutual agreement to resolve disputes outside of the courtroom. *See First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 943, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995) ("[A]rbitration is simply a matter of contract between the parties; it is a way to resolve those disputes—but only those disputes—that the parties have agreed to submit to arbitration."); *cf.* AAA Commercial Rules, Rule 1(a) (stating that the AAA Rules apply whenever parties provide for arbitration by the AAA, but noting that the "parties, by written agreement, may vary the procedures set forth in these rules"); *id.,* Rule 43(a) (stating that the scope of the award must be "within the scope of the agreement of the parties"). InterChem and Oceana could have included in the Contract a clause bestowing on the Arbitrator the authority to award sanctions for either parties' abuse or frustra-

tion of the arbitration process. Granting the Arbitrator authority beyond that granted to him by the parties conflicts with the most basic principles underlying the arbitration process.[16]

The Court, therefore, finds that the Arbitrator exceeded his authority in imposing monetary sanctions on DiDonna. The parties in their agreement did not grant the Arbitrator such authority, nor did the rules of arbitration incorporated into the Contract authorize any such action. The Court also does not find that the Arbitrator had inherent authority to impose sanctions on DiDonna. For these reasons, the Court vacates the Arbitration Award to the extent that it sanctions DiDonna personally.

### D. *INTERCHEM'S REQUEST FOR ADDITIONAL LEGAL FEES*

InterChem requests the Court to award additional legal fees for InterChem's costs relating to the Confirmation Proceedings as well as those incurred during Oceana's efforts to oust the Arbitrator. (InterChem Mem. at 14–15.) InterChem does not indicate to the Court under what authority it seeks the imposition of these additional fees. Nonetheless, "[t]he general rule under the FAA appears to be that

refusals to pay an award must be in bad faith before attorney's fees for confirmation proceedings are awardable." Gary B. Born, *International Commercial Arbitration in the United States* 627–28 (1994) (citing *C.T. Shipping, Ltd. v. DMI (U.S.A.) Ltd.*, 774 F.Supp. 146 (S.D.N.Y.1991)); *see also First Nat'l Supermarkets*, 118 F.3d at 898 (considering the awarding of attorney's fees under the court's inherent equitable power and stating "[i]n actions for the confirmation and enforcement of arbitral awards, a court may award attorneys' fees if the party challenging the award has refused to abide by an arbitrator's decision without justification" (internal quotation marks omitted)); *United States Offshore*, 753 F.Supp. at 92 (considering a party's motion for sanctions under Fed.R.Civ.P. 11 and attorney's fees incurred in confirming an arbitration award and finding that "[s]uch sanctions are to be imposed when it appears that a pleading has been interposed for any improper purpose, or where, after reasonable inquiry, a competent attorney could not form a reasonable belief that the pleading is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law," quoting *Eastway Constr. Corp. v. City of New*

---

**16.** Oceana further alleges that, even if the Arbitrator had the authority to award sanctions, his award in this case violated Oceana's and DiDonna's constitutional right to due process prior to the imposition of sanctions. The Court does not address this issue because "the state action element of a due process claim is absent in private arbitration cases." *Davis v. Prudential Sec., Inc.*, 59 F.3d 1186, 1191 (11th Cir.1995); *see United States v. Am. Soc'y of Composers, Authors & Publishers*, 708 F.Supp. 95, 96–97 (S.D.N.Y.1989). The arbitration in this case was arranged by a voluntary contractual agreement between Oceana and InterChem and was therefore private and not subject to constitutional due process protections. Oceana does not identify any contrary authority supporting the application of constitutional guarantees to the proceeding.

Although Oceana did not have a constitutional right to due process before the imposition of sanctions, "[a]ll parties in an arbitration proceeding are entitled to notice and an opportunity to be heard." *Konkar Mar. Enters., S.A. v. Compagnie Belge D'Affretement*, 668 F.Supp. 267, 271 (S.D.N.Y.1987) (internal quotation marks omitted). The Court, however, declines to address the issue of whether the notice and hearing afforded Oceana and DiDonna in this matter were sufficient. The Court upholds the award of fees as to Oceana as within the scope of the agreement of the parties, and not as sanctions for which such notice and hearing might be required, and vacates the award of fees as to DiDonna personally on other grounds.

*York,* 762 F.2d 243, 254 (2d Cir.1985) (internal quotation marks omitted)).

Although the Award has been upheld, save for the award of fees against DiDonna personally, Oceana made non-frivolous arguments based on applicable law in challenging the Award. There is no evidence that either Oceana or DiDonna acted in bad faith in opposing the Arbitration Award. *See C.T. Shipping, Ltd.,* 774 F.Supp. at 155 (declining to award attorney's fees as sanctions under Fed.R.Civ.P. 11 for the challenge of an arbitration award where "the court [was] not persuaded that [all of the challenger's] arguments had 'no chance of success' "). Furthermore, regarding Oceana's appeals to the AAA to remove the Arbitrator, the Court cannot conclude on the facts before it that Oceana acted in bad faith in bringing those complaints. Therefore, the Court denies InterChem's motion for the assessment of additional legal fees.

## IV. *CONCLUSION*

InterChem's petition to confirm the Arbitration Award is granted in part, as Oceana has failed to prove (i) that a rational person would find evident partiality in this case, (ii) that the Arbitrator exhibited manifest disregard for the law in rendering his Award, or (iii) that the award of attorney's fees against Oceana was beyond the scope of the Arbitrator's authority. Oceana's motion to vacate the Award in part is also granted in part, as the Arbitrator exceeded the scope of his authority in awarding attorney's fees against DiDonna. InterChem's request for additional fees is denied as Oceana did not exhibit bad faith in contesting the award.

## V. *ORDER*

Accordingly, it is hereby

**ORDERED** that the Petition to Confirm Arbitration Award of InterChem Asia Pte. Ltd. and InterChem Chemicals Pte. Ltd.

(collectively "InterChem") is GRANTED IN PART, and that the Award, dated September 9, 2004 and signed by the arbitrator Harold R. Tyler, Jr., ("Award") is CONFIRMED IN PART, and VACATED IN PART, to the extent that the Award included an award of attorney's fees against Oceana Petrochemicals AG's ("Oceana") counsel, Richard A. DiDonna, personally; and it is further

**ORDERED** that Oceana's Cross–Motion to Vacate the Award In Part is GRANTED IN PART, and DENIED IN PART, as stated above; and it is further

**ORDERED** that InterChem's motion for additional attorney's fees incurred in confirming the Award and in defending against Oceana's attempts to remove the arbitrator, Hon. Harold R. Tyler, Jr., is DENIED; and it is further

**ORDERED** that the Clerk of Court is directed to close this case.

**SO ORDERED.**